## ALDRICH v. ALDRICH.

VACATING RETURN OF COMMISSIONERS IN PARTITION.—The value put by commissioners in partition on lands to be divided should not be set aside unless the value is so gross, incorrect and unequal as to warrant an inference that the commissioners acted from an unfair or improper motive. The Courts apply substantially the same rule in vacating the return of commissioners in partition as are applied in vacating awards of arbitrators appointed under order of Court. If the rule announced in *Moore* v. *Williamson*, 10 Rich. Eq., 328, that a *party* may bring property to sale after valuation by making and securing a bid of a material advance in price be considered an exception it will not be extended so as to vacate a valuation by the *unsecured* bid of one *not a party* to the action.

Before PRINCE, J., Barnwell, October, 1904. Affirmed.

Action by Alfred Aldrich, executor, against Rosa Aldrich, S. A. Richardson, Nell Duncan *et al.*

From circuit decree, S. A. Richardson and Nell Duncan appeal.

*Mr. B. T. Rice,* for appellants, cites: 2 Rich. Eq., 384; Rich Eq., 180; 10 Rich. Eq., 328.

24—75

*Mr. D. S. Henderson,* contra, cites : 4 DeS., 84 ; Rich. Eq.,
Cas., 108 ; 1 Bail., 46 ; 58 S. C., 333 ; 14 S. C., 458 ; Freem.
on Cot. and Par., sec. 525.

November 21, 1906.   The opinion of the Court was de-
livered by

MR. JUSTICE JONES.   The executor of Mrs. Martha Ayer
Aldrich brought this action to obtain a construction of her
will, to adjust the rights and equities of the parties benefi-
ciary thereunder, and to partition the lands known as "The
Oaks" among her devisees, they to account for the value
of advancements in the final division.

Judge Gage made a decree, to which no exception has
been taken, construing the will as intending that her chil-
dren devisees should share equally after deducting advance-
ments, and ordering that a writ of partition be issued to five
commissioners, two to be named by the plaintiffs, two by the
defendants, and the fifth by the clerk, directing them to
ascertain and report the value of certain lands specifically
devised by testatrix to her daughters, Miss Rebecca Aldrich
and Mrs. Mary Aldrich Allen, and the value of certain lands
given by the testatrix in her lifetime to her daughters, Mrs.
Sarah Aldrich Richardson and Mrs. Cornelia Aldrich Dun-
can, valuation to be made as of the time of their gift by the
testatrix, directing also that $2,700 be charged against the
share of Mrs. Allen, and $1,500 against the share of her
daughter, Mrs. Daisy Aldrich Bonham, as advances made to
them respectively and referred to in the will.   The plaintiff,
Alfred Aldrich, and the defendant, Mrs. Rosa Aldrich,
having admitted receiving advancements exceeding the value
of their shares, claimed no further interest in the estate.
The decree of Judge Gage concluded as follows :

"That after recommending what lands shall be sold for
the purpose of paying the specific bequests and legacies men-
tioned in the will, and the costs of proceeding, that said com-
missioners do forthwith divide the undivided residue of the
lands of said estate between the said Robert Aldrich, Re-

becca Aldrich, Sarah Aldrich Richardson, Mary Aldrich Allen, Daisy Aldrich Bonham and Cornelia Aldrich Duncan, equally after deducting from the share of each for equality of partition the value of advancements heretofore made them, ascertained by the commissioners as hereinbefore directed, or as recited in said will. That any of the parties have leave to apply at the foot of this decree for such further orders as may be necessary to carry the same into effect."

The commissioners appointed under this order were J. C. Griffin, J. R. Harden, W. W. Moore, N. F. Kirkland, Jr., and W. I. Johns, and after being sworn and viewing the land the commissioners made their return—a majority report by the first four named commissioners and the minority report by commissioner Johns. The majority report valued the tract conveyed to Mrs. Richardson in the lifetime of the testatrix at $2,960, and the tract conveyed to Mrs. Duncan at $3,040, and recommended that Mrs. Duncan pay Mrs. Richardson $40, so as to make the sum advanced to each $3,000. Each of these tracts contained about 400 acres and were, therefore, valued at about $7.50 per acre. Commissioner Johns, making the minority report, valued these lands as not exceeding $4 to $5 per acre at the time of the gift of them by the testatrix. With respect to these valuations three contentions were raised before Judge Prince in behalf of Mrs. Richardson and Mrs. Duncan by exceptions to the return of the commissioners: (1) that the commissioners violated the order of Judge Gage requiring valuations as of the time of the conveyance; (2) in not appraising without reference to improvements subsequently placed thereon by the grantees; (3) that the valuation was excessive. Judge Prince overruled these exceptions and sustained the majority report. The appellants, Mrs. Richardson and Mrs. Duncan, renew their contention by exceptions to this Court.

The first and second grounds of objection were properly overruled by Judge Prince, as there was no evidence offered

to show that the commissioners violated the order of Judge Gage in this particular; on the contrary, it appeared by the oath of Kirkland, one of the commissioners, that the commissioners did value these lands as of the date of their acquisition by the defendants, which was before any improvements were placed thereon by the defendants. The third objection is very satisfactorily disposed of by Judge Prince in this language, which we quote in full:

"As to the third ground of objection alleging excessive valuation, which has been supported by a number of affidavits; while it is true that a return to a writ in partition may be assailed in this way and in a proper case may be set aside and the writ in partition recommitted to the same or some other commissioners, yet it is not a practice to be favored, and should be done only in extreme cases, such, for instance, the authorities say, as where fraud or misconduct can be imputed to the commissioners. I find nothing of the sort in this case. It is simply a matter of opinion among the various parties who have testified pro and con, and the affidavits are as numerous and strong on the one side as on the other, and as the affiants are nearly all strangers to me, I have no means of judging of the weight I should attach to their several statements. The tribunal designated by the law for the ascertainment of values and the equal division of the lands is the commissioners in partition, and their judgment must be held in higher esteem than any other. They are supposed to be not only good and true men of sound judgment and discretion, chosen with reference to their special fitness for the duties assigned to them and selected upon the highest principles of fairness to all parties, two chosen by the plaintiffs, two by the defendants, and the fifth by the clerk of the Court, all sworn to fairly and impartially perform the duty imposed upon them. The tribunal thus selected is calculated to inspire confidence, and in the absence of anything going to impeach the *bona fides* of their acts, their decision should be final. It is rarely the case, that in the division of a large estate among a great many parties

that all will be satisfied with the return of the commissioners, and if their decision can be set aside simply because some are dissatisfied with the result and produce affidavits of those who differ in opinion with the commissioners as to values, the same thing would be gone over and over again and again as long as honest men differ in opinion and there would be no end to the litigation. The law I think well settled in conformity with the foregoing views. *Greer and Wife* v. *Wings,* 4 DeS. Eq., page 84, where it is held that 'the return of commissioners in the division of land on writ of partition will be supported by the Court unless clearly shown to be erroneous and unjust.' 'In the absence of any evidence, the Court is bound to assume that the commissioners, in compliance with their sworn duty, acted fairly and impartially, and made such partition as in their judgment was best for the interest of all parties concerned.' *Riley* v. *Gaines,* 14 S. C., 454, 458. For these reasons, exceptions I. and II. are overruled. I have hesitated much in coming to this conclusion, for the reason that I have been profoundly impressed with the strength and force of the argument of counsel for the defendants.

"There is another reason why I do not feel at liberty to sustain the first two exceptions, and it is this: In my opinion, the decree of his Honor, Judge Gage, practically constitutes the commissioners in partition arbitrators to ascertain and report the value of the lands advanced these excepting defendants. Their return, therefore, should not be disturbed unless for reasons that would set aside an award of arbitrators appointed under the rule of Court. The award of arbitrators will not be disturbed by the Court unless it is made clearly to appear that they exceeded their authority, or were guilty of corruption or partiality. In this case no such showing is made. Besides, in *Buckler* v. *Farrow,* Rich. Eq. Cases, 178, 180, in speaking of the commissioners in partition, the Court uses this language: 'The commissioners are the agents of the parties, acting under the authority of the Court, and they are as much bound by their return, made

in due form, fairly and impartially, as a plaintiff and defendant would be by any award of arbitrators made under a rule of Court.' There is no doubt that this is true, and if true, the burden of showing the *mala fides* of the commissioners is on those who attack their return. 'An award will not be set aside except for corruption or partiality in the arbitration or for some manifest error made by them.' *Askew* v. *Kennedy,* 1 Bailey, 46."

It is urged by appellant that the Court erred in holding that the return of commissioners could not be assailed except for fraud or misconduct; whereas, it should have been held that said report could be assailed for mistake and manifest injustice and that the preponderance of the proof was that the said return was unjust. Even if it should be conceded that a preponderance of the evidence outside the report of the commissioners on the lands given Mrs. Richardson and Mrs. Duncan was too high, it was proper to sustain the valuation made by the commissioners, unless the Court was satisfied that the valuation was so grossly incorrect and unequal as to warrant an inference that the commissioners acted from an unfair or improper motive. It is a matter of common knowledge that men of experience may honestly differ as to the value of lands. So long, therefore, as the valuation by commissioners may be accounted for on this ground it should be sustained, and it is not sufficient to overthrow a valuation by commissioners merely to show that in the opinion of other honest and experienced men the true value is higher or lower than that made by the commissioners under oath. The rule in England, as stated in Freeman on Cotenancy and Partition, sec. 525, is that "it is improper for the Court to interfere with the valuation of commissioners, unless there be some mistake in it so gross as to induce the Court to think that the commissioners have acted from unjust, corrupt or fraudulent motives." Such is the rule in this State, and the Courts apply substantially the same rule in vacating the return of commissioners in partition as are applied in vacat-

ing awards of arbitrators appointed under order of Court.
In *Greenville* v. *Spartanburg*, 62 S. C., 105, 125, 40 S. E.,
147, it is declared that to avoid an award it is necessary to
show that the arbitrators exceeded their power; or were
guilty of fraud, corruption or partiality; or were influenced
by some gross and palpable mistake of law or fact. It is
true, that the return of commissioners in partition is not ab-
solutely final and is to be submitted to the Court for con-
firmation, still, in confirming or rejecting said return, the
Court will not retry matters of valuation which it was the
duty of the commissioners to determine, but will consider
the objections and evidence presented against the return
only with a view to ascertain whether the return is the re-
sult of the fair and impartial judgment of the commissioners
and within their power to make.

After setting off to Miss Rebecca Aldrich one hundred
(100) acres of "The Oaks" tract, including the ancestral
home of Aldrichs, and fifty (50) acres of said tract in addi-
tion to the "Shuck" tract of one hundred and fifty (150)
acres to Mrs. Allen, as to which no contention has arisen,
the majority of the commissioners appraised the residue of
"The Oaks" tract, consisting of about three hundred and
fifty-two (352) acres, at fifteen ($15) dollars per acre, and
allotted to Robert Aldrich two hundred (200) acres thereof,
valued at three thousand ($3,000) dollars, and to Mrs. Bon-
ham one hundred (100) acres, valued at one thousand five
hundred ($1,500) dollars, which, with fifteen hundred
($1,500) dollars of property previously advanced, made
her portion three ($3,000) thousand dollars, and recom-
mended a sale of the remaining fifty-two (52) acres of "The
Oaks" tract. Commissioner Johns, in his minority report,
valued these lands at twenty-five ($25) dollars per acre, and
states his reasons therefor as follows:

"My valuation of twenty-five ($25) dollars per acre of
'The Oaks' place is based expressly upon the fact that upon
a careful examination of the lands I find that it is covered
with very fine pine timber, and is very near the town of

Barnwell, and also is a magnificent tract of land with little or no waste land. And upon the fact that I offered to the majority of the board of commissioners to take the entire tract of three hundred and sixty-seven (367) acres (same being left after said specific devises to Mrs. M. A. Allen and Rebecca Aldrich) at the price of twenty-five ($25) dollars per acre, and pay the cash for same upon examination of deeds."

It appears that about two hundred and twenty-five (225) acres of this land is woodland, as stated in the affidavit of W. W. Duncan. In support of the motion to vacate the return of commissioners, the appellants submitted a number of affidavits, among them one by commissioner Johns, declaring his willingness to take the residue of "The Oaks" tract at twenty-five ($25) dollars per acre, another, H. W. Richardson, declaring that he would purchase one hundred (100) acres of said tract, either woodland or cultivated land, at twenty-five ($25) dollars per acre, another by D. C. Burckhalter, declaring that he would be willing to purchase one hundred (100) acres of said woodland at twenty-five ($25) dollars per acre, and another by W. L. Cave, that he would purchase the entire woodland of said tract at twenty-five ($25) dollars per acre and pay cash therefor, either at public or private sale. In overruling the objection to the valuation of the commissioners, Judge Prince decided as follows:

"What I have said as to the valuation by the commissioners of lands owned by Mrs. Richardson and Mrs. Duncan, in considering the first two exceptions, applies with much greater force to objections raised in exceptions III. to VII., inclusive, as to the valuation of the lands allotted by the commissioners to Robert Aldrich and Mrs. Daisy A. Bonham. It was clearly within the province of the commissioners to go upon these lands, fix their value and assign them by tracts to the parties entitled thereto. This they have done, and the presumption is that they have done so honestly and fairly. This presumption must obtain until

overthrown by a clear preponderance of the evidence. I cannot find that the preponderance of the evidence is against the valuation fixed by the commissioners. There are numerous affidavits pro and con, but they satisfy me that honest men not only may, but will often differ in opinion. In thus holding I am not unmindful of the affidavits of those who say they will pay twenty-five dollars per acre for certain of these lands, nor have I forgotten the minority return of W. I. Johns, one of the commissioners. It must be noted that the witnesses, except Mr. Johns, say they will bid twenty-five dollars per acre for only a given number of acres. This may be true and a limited number of acres may really be worth that price, when the tract taken as a whole may not be worth more than the amount fixed by the commissioners. But it should be specially noted that there is not in the affidavits anywhere any evidence that either of these parties, including Mr. Johns, is in such financial condition as to be able to make good his offer. Again, it should be remembered that neither of these persons are parties to this action and the Court has no jurisdiction over them as to compel compliance with their several offers."

The appellants, by their exceptions, raise two main contentions as to the allotment of "The Oaks" tract: (1) That said lands were valued excessively low by the commissioners and their return should be set aside. (2) That the offer of a substantial bid for the land in advance of the valuation by the commissioners should shake the proposed allotment and bring the land to sale, under the authority of *Moore v. Williamson,* 10 Rich. Eq., 328.

The first contention has been disposed of by what has been said in reference to attacking the return of commissioners. The evidence did not satisfy the Circuit Court that the commissioners were guilty of any fraud, corruption or partiality in making said valuation, and we cannot say that the preponderance of the evidence is against the view of the Circuit Court.

In the case of *Moore* v. *Williamson, supra,* the Court held that a party dissatisfied with the rate at which land is recommended by commissioners in partition to be assigned to another may always bring the property to sale by making and securing a bid for a material advance in price over the value assessed by the commissioners. In the present case no party to the suit has made and secured a bid for the land, and we know of no precedent in this State which allows such privilege to one not a party. Parties have interest in the question whether the land shall be partitioned in kind or sold for partition. The Court has jurisdiction over such parties and may, by proper orders, require a deposit of money or bond to secure such bids, or may otherwise secure the bids in the disposition of the interest of the party in the premises. If, therefore, the doctrine of *Moore* v. *Williamson* be regarded as an exception to the general rule already announced as to the grounds upon which the return of commissioners may be overthrown, we are unwilling to extend the exception by allowing such return to be vacated by the unsecured bid of one not a party to the record.

The foregoing views control and overrule all the material exceptions.

The judgment of the Circuit Court is affirmed.