7007

## PARROTT v. BARRETT.

1. PARTITION.—The opinion of the Court on the former appeal in this case formulated a scheme of partition, and was not a mere suggestion.

2. IBID.—Return of commissioners in partition sustained, because there is not found anything in the evidence going to show they were influenced by any unfair or improper motive.

3. IBID.—The doctrine announced in *Moore* v. *Williamson*, 10 Rich. Eq., 323, that a party in interest dissatisfied with the rate at which land

is recommended to be assigned to another cotenant, may shake the proposed assignment and bring the land to sale by securing a higher bid, does not apply to the facts of this case.

4. IBID.—Recommendation of commissioners that a tract of land be sold in order to obtain a small balance over equality to be paid to other tenants, may be modified so as to vest the whole tract in those entitled to larger share, and permitting them to pay the small balance to other tenants.

5. IBID.—INSPECTION OF LANDS.—CIRCUIT JUDGE is not required to inspect lands in order to assist himself in arriving at a proper conclusion on hearing exceptions to commissioners' return. Could he set up an opinion formed on such view against that of commissioners?

6. ORDER OF SUBSTITUTION ordered, but not actually drawn up and signed, may be formally made on circuit after case remanded.

Before MEMMINGER, J., Sumter, July, 1907. Affirmed.

Action by Nettie F. Parrott *et al.* against George McD. Barrett *et al.* From circuit decree all parties appeal except defendants, Thos. M. Dent and Margaret A. Phillips.

*Messrs. A. B. Stuckey* and *Johnstone & Cromer,* for plaintiffs. *Mr. Stuckey* cites: *Party in interest may make secured bids:* 75 S. C., 378; 76 S.C., 499; 10 Rich. Eq., 323. *Tenant having dealt with a part of common property as his own should have this assigned him:* 33 S. C., 404; 35 S. C., 61; 39 S. C., 450; 43 S. C., 38; 73 S. C., 35.

*Messrs. Johnstone & Cromer* cite: *The doctrine in Moore v. Williamson, 10 Rich. Eq., 323, was not overruled by, but acknowledged in,* 75 S. C., 369; 76 S. C., 494; 79 S. C., 394.

*Messrs. Haynsworth & Haynsworth,* for defendant-appellants, cite: *Return of commissioners must be sustained unless there be good reason to impugn it for unfairness:* 76 S. C., 494.

*Messrs. Lee & Moise,* for defendant-respondents, cite: *No unfairness having been shown on part of commissioners,*

*their return must stand:* 75 S. C., 309; 76 S. C., 494; 79 S.
C., 394; 23 S. C., 323; 19 S. C., 101; 5 S. C., 433; Rich.
Eq. Cas., 178; 14 S. C., 454; 16 S. C., 486; 1 Bay, 454;
70 S. C., 543; 58 S. C., 299; 62 S. C., 705.  *The previous
opinion in this case settles the scheme of partition:* 17 S. C.,
163; 19 S. C., 156; 21 S. C., 501; 47 S. C., 525; 51 S.
C., 333.

September 7, 1908.  The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES.  This is an action for the partition
of a tract of 889 acres of land in Lee county, formerly
belonging to James Rembert, who died in 1858, devising
the same to his daughter, Jane Barrett, for life, and at her
death "to the heirs of her body, who may be living at the
time of her death, share and share alike, to them and their
heirs forever."  Jane Barrett, the life tenant, died in 1901.
In 1874 she and her children, Charles, Elizabeth, George,
Caleb, Samuel, Albertus and Martha, made among them-
selves a partition of said land, in accordance with a plat
made by S. M. Boykin, surveyor, in 1870.  In the division
tract No. 5, containing 168 1-2 acres, was assigned to Jane
Barrett, life tenant; tracts Nos. 1 and 3, containing 106 1-2
acres, was set apart to Charles S. Barrett, and other tracts
were allotted to the other children, and possession was taken
by the respective parties.  Charles Barrett died in 1880,
before the death of the life tenant.  In July, 1901, soon after
the death of the life tenant, the plaintiffs, who are children
of Charles Barrett, brought this action against the defend-
ants, who are children of Jane Barrett, or their privies or
successors in interest, for the partition of said original tract
according to the said will of James Rembert.

On the former appeal in this case, 70 S. C., 205, 49 S. E.,
563, this Court sustained the construction of said will made
by Judge Gage, holding that the plaintiffs, as grandchildren
of Jane Barrett, answered the description of heirs of her

body at the time of her death, and that each of said grand-children, taking per capita and not per stirpes, was entitled to one-tenth of the land in question. The Court also held that the partition of 1874 was not binding on plaintiffs, as they were not parties thereto, but that such partition was binding among all the parties to it. Hence, in the effort to do practical justice to all the parties, the Court sought not only to preserve the right of plaintiffs, but also to preserve, as far as consistent therewith, the status arising under the partition of 1874, and adopted as a scheme for partition the plan outlined in the following extract from the opinion of the Court: "In the settlement of this case the Court is disposed, as far as possible consistent with plaintiff's rights, to preserve the possession of defendants or their privies of the parcels set apart to them in said partition, as they are bound, as among themselves, to abide by the same. The Court, however, is not quite satisfied with the rule adopted by the Circuit Court, in holding that each acre is practically as good as another, and in making one acre the unit value, as the testimony is very meagre on the subject. We, therefore, think that each parcel, as set apart in the partition of 1874, should be valued by appraisers appointed for that purpose, and that plaintiffs should first be allotted tracts 1 and 3, now occupied by them, then to the extent necessary to give them four-tenths of the value of the whole 889 acres they should be allotted from tract No. 5, containing 168 1-2 acres; then, if this be still insufficient, any deficiency remaining should be made up to them by an assessment for equality of partition upon each parcel assigned to defendants in the partition, in the proportion which the value of their respective parcels bears to said deficiencies, to be paid by defendants or their privies, within such reasonable time as the Circuit Court may fix, and in default of such payment plaintiffs to have leave to apply to the Circuit Court for the proper relief.

"After plaintiffs shall have thus received four-tenths of

the whole tract of 889 acres, the defendants shall be entitled to the parcels respectively assigned to them in said partition. If the whole tract, No. 5, be not required to give plaintiffs four-tenths of the 889 acres, the remainder should be partitioned according to law among the defendant children of Jane Barrett.

"The judgment of this Court is that the decree of the Circuit Court is modified in the particulars named, and the cause is remanded for such further proceedings as may be necessary to carry out the views above mentioned."

Thereafter a writ of partition was directed to five commissioners, appointed as required by the statute, containing instructions in accordance with the language of the Court above quoted. The commissioners made return, showing their valuation of each parcel of the land as partitioned in 1874 and allotted to the defendants or their privies, the several parcels which they then received. They allotted to plaintiffs parcels 1 and 3. This left a deficiency in value of $10,051.50, to supply which resort was had to tract No. 5. This tract, containing 168 1-2 acres, was valued at $60 per acre, amounting to $10,110, which exceeded plaintiffs' shares by only $58.50, less than the estimated value of a single acre. Plaintiffs sought to have their shares allotted in kind and to be allowed to pay the difference, $58.50, into Court and take the whole tract. The commissioners, however, reported that it would be impracticable to so divide No. 5 as to give plaintiffs and defendants their respective shares therein without manifest injustice to the rights of the parties, and so recommended the sale of tract No. 5, at public outcry, at a price not less than $60 per acre, and a division of the proceeds according to the rights of the parties. The plaintiffs attacked the return of the commissioners, and under an order of reference by Judge Watts much testimony was taken on both sides. Plaintiffs further submitted bids, with security for same, on all lands assigned to the defendants, at a materially higher valuation than that

fixed by the commissioners, and also offered to subject the whole land to sale, including tracts Nos. 1 and 3, assigned to them. Defendants also sought to bring tract No. 5 to sale by tendering a secured bid of an advance of ten dollars per acre.

Judge Memminger affirmed the report of the commissioners, except as to their recommendation for the sale of tract No. 5. As to this matter, he held that the difference in valuation was so trifling that it would be unjust to sell the land when plaintiffs had indicated a willingness to pay the difference to the defendants and take the land in kind. He accordingly decreed that plaintiffs pay the said difference and take tract No. 5.

Responding to plaintiffs' exceptions, we hold:

1. That the Circuit Court was correct in construing the opinion of this Court on the former appeal as formulating a scheme of partition of said lands as a direction of the Court and not as a mere suggestion. It is within the unquestionable power of a court of chancery to do this in the administration of justice and equity to all concerned. It is of little consequence whether the persons named in the writ be called "appraisers" or "commissioners," their duties were as prescribed in the writ embodying the directions of the Court. Among these they were directed to make appraisement or valuation with a view to assessment for equality of partition, if necessary, and to allot to defendants the parcels taken by them in the partition of 1874, and to plaintiffs the parcels received by their father in said division, and to resort first to tract No. 5 in allotting to plaintiffs their four-tenths interest in the property.

2. The established rule is, that in order to overthrow the valuation made by commissioners in partition it must be shown that it is so grossly incorrect and unequal as to justify an inference that the commissioners acted from an unfair and improper motive. *Aldrich* v. *Aldrich,* 75 S. C., 369, 55 S. E., 887; *Allen* v. *Allen,* 76 S. C.,

499, 57 S. E., 549; *Bowen* v. *True,* 79 S. C., 394; 60 S. E. Rep., 943.

After careful review of the testimony, we are content to leave undisturbed the conclusion of the Circuit Court sustaining the valuations made by the commissioners. The commissioners were selected by the parties,—were men of experience, intelligence and character,—viewed the premises and were unanimous in their conclusion. There is nothing to show that their action was influenced by any unfair or improper motive. Quite a number of witnesses differed from the commissioners in their opinion as to the valuations, but quite a number agreed with the commissioners. As declared in *Aldrich* v. *Aldrich, supra,* "It is a matter of common knowledge that men of experience may honestly differ as to the value of land. So long, therefore, as the valuation of the commissioners can be accounted for on this ground it should be sustained, and it is not sufficient to overthrow a valuation by commissioners merely to show that, in the opinion of other honest and experienced men, the true value is higher or lower than that made by the commissioners under oath."

3. The plaintiffs contend, under the doctrine of *Moore* v. *Williamson,* 10 Rich. Eq., 323, that, having made and secured a bid at a material advance in price over the value assessed by the commissioners, as to tracts other than No. 5, the Court should have ordered a sale of the tracts allotted to the defendants. The rule stated in *Moore* v. *Williamson* is approved as a general rule. and its application may prove useful and salutary in preventing any gross injustice in making partition. In that case the commissioners made return that the land could not be divided among the parties in interest by metes and bounds without manifest injury to all the parties. They then appraised the land at a certain sum per acre, amounting to about $3,000, and recommended that it be vested in one of the parties, Mrs. Williamson, at that valuation, for reasons stated by

them. Belk, one of the parties in interest, made an offer to make the land bring $500 more than the valuation, if exposed to sale. Whereupon Chancellor Dargan ordered the land to be sold, holding Belk as bidder corresponding to the amount of his offer. On appeal this judgment was affirmed; the Court, speaking by Chancellor Johnston, said: "A party dissatisfied with the rate at which land is recommended to be assigned to another party may shake the proposed assignment and bring the property to sale by making and securing a bid for a material advance in price over the value assigned by the commissioners. The Court would not attend to an insignificant advance, since such a practice would tend to hang up cases indefinitely without sensibly promoting the justice of cases; but whenever the advance is for the substantial benefit of all the parties interested in the partition, the Court is bound to attend to it." That was a case in which justice to all parties concerned required a sale of the property, because a partition by metes and bounds could not be made. As correctly held by Judge Memminger, the doctrine of *Moore* v. *Williamson* is not applicable to the peculiar situation in this case. The scheme of partition directed was intended to harmonize as far as possible with the division by metes and bounds already had among the defendants and did not contemplate a sale of the parcels assigned to defendants in 1874, but contemplated an assessment thereon, if necessary, so as not otherwise to disturb their possession.

4. In this connection we may consider the defendants' exceptions to the refusal of Judge Memminger to bring tract No. 5 to sale, because of their secured bid to make that tract bring at least $70 per acre, or $10 per acre more than the valuation of the commissioners.

The contention of the defendants is that while *Moore* v. *Williamson* has no application with respect to the question of bringing to sale the tracts assigned to defendants, it has application with respect to tract No. 5.

The writ in partition, issued under the order of Judge Klugh, directed the commissioners, after allotting tracts 1 and 3 to plaintiffs, to allot to plaintiffs from tract No. 5; and further directed that if the whole of tract No. 5 be not required to give plaintiffs their four-tenths of the whole, "then you shall allot unto plaintiffs so much of tract No. 5 as may be necessary to give unto plaintiffs their said four-tenths of the whole 889 acres, and you will then allot and divide the remainder of said lot No. 5 amongst the defendants, etc.; or in case you find that such remainder, if any, cannot be fairly and fully divided amongst the last named six defendants without injury to the whole or one or more of them, you can recommend a sale of such remainder; the proceeds shall be equally divided amongst them." No exception has been taken to the directions contained in the writ. It thus appears that plaintiffs were to receive the remainder of their share in kind and that no sale of any portion of tract No. 5 was contemplated, except as to such portion thereof as should remain after allottment to plaintiffs. It would seem to be inequitable in this partition to permit defendants to bring tract No. 5 to sale and deny to plaintiffs the privilege of bringing to sale the tracts allotted to defendants. Defendants are unwilling to accept plaintiffs' proposition to bring all of the tracts to sale.

In this connection we may say that we also approve the action of the Circuit Court, to which defendants take exception, in allotting the whole of lot No. 5 to plaintiffs, subject to their paying to defendants $58.50, the difference in value between their appraised interest and the appraised value of the whole tract. This affects a practical partition in kind on the basis of the approved valuation of the commissioners and in harmony with the directions of this Court.

5. Plaintiffs' remaining exceptions do not call for any extended notice.

Exception one complains of the refusal of Judge Memminger to visit and view the premises before making his decree. The Judge stated, as reason for his refusal, that he had neither knowledge nor experience with reference to the value of agricultural lands, and that if he should visit the lands he would probably not know anything more as to their value for farming purposes than at present, before visiting them; but if he found himself unable to reach a decision without inspecting the land, he might consent to do so. We know of no law which makes it the duty of the Court to view the premises in partition proceedings. Sec. 2950, Code of Laws, provides that the jury, at the request of either party, may be taken to view the place or premises relating to the contest, when it appears to the Court that such view is necessary to a just decision; but in *Bodie* v. *Ry. Co.*, 66 S. C., 315, where the jury informed the Judge that a visit to the place would not benefit them, it was held to be wholly within the discretion of the Judge whether he would send the jury to view the place. For greater reason, if there is no statute.requiring the Judge to view the premises, it is not error to decline to do so. A far more serious question would have arisen if the Judge had, at the mere request of one party, viewed the premises and interposed his opinion, *formed upon such view*, against the opinion of those specially charged with that duty.

6. The failure of the Circuit Court to make an order substituting A. B. Stuckey in place of Nettie F. Parrot, who, since the commencement of this action, conveyed her interest to Charles S. Barrett, who afterwards conveyed one-half thereof to A. B. Stuckey, was a mere inadvertence. The record, at folio 91, shows that such an order was directed to be made, and the trial proceeded as though the order had been formally signed. If deemed necessary, such an order may be formally made after remand to the Circuit Court.

With respect to the substitution of the devisees of the defendant, Elizabeth J. James, who died after the commencement of the action, the appellants are under a misapprehension, as it appears by reference to folio 445 of the record that such an order was made.

The exceptions, both of plaintiffs and defendants, are overruled and the judgment of the Circuit Court is affirmed.

Mr. Justice Woods, *concurring*. I concur on the ground that the judgment of the Supreme Court in the former appeal required actual partition of the land, according to the scheme therein laid down. But for this I think the parties would have the right to bring the several tracts of land to a sale, by giving adequate assurance to the Court that they would bid more at the sale than the assessed value, under the rule laid down in *Moore* v. *Williamson*, 10 Rich. Eq., 323.