JACOB BARGE *vs.* FREDERICK SCHIEK.

Argued April 18, 1894. Affirmed May 7, 1894.

No. 8599.

**Construction of Contract.**
  A certain lease construed.

Appeal by defendant, Frederick Schiek, from a judgment of the District Court of Hennepin County, *William Lochren, Henry G. Hicks* and *Frederick Hooker*, JJ., entered July 21, 1893, for the recovery of the possession of the premises in dispute.

On July 20, 1887, the plaintiff, Jacob Barge, owned the premises No. 49 Washington Avenue South in Minneapolis and had rented the adjoining building No. 47 of John Schulte who owned it and had a ground lease for ninety nine years of the lot on which it stood, but Schulte's lease to Barge had expired on July 15, 1887.

Barge claimed the right to a renewal of the lease from Schulte for five years more.    On July 20, 1887, Barge entered into a contract. or lease with defendant, Frederick Schiek, as follows:

This indenture made on the 20th day of July, 1887, by and between Jacob Barge of Minneapolis, Minn., party of the first part,. lessor, and Frederick Schiek, of the same place, party of the second part, lessee, witnesseth:

That the said party of the first part, in consideration of the rents. and covenants hereinafter mentioned, does hereby demise, lease and let unto the said party of the second part, and the said party of the second part does hereby hire and take from said party of the first part the following described premises, situated in the county of Hennepin and state of Minnesota, viz.:   The first floor and basement in the rear part, or back of the barber shop, of that certain brick building known as No. 49 Washington Avenue South in said city of Minneapolis, and the basement and rear room of the adjoining building No. 47 on said Washington Avenue South.

To have and to hold the said premises, just as they are, without any liability or obligation on the part of said lessor to make any alterations, improvements or repairs of any kind in, on or about said premises, for the term of five years from this date, yielding and paying therefor the rent of three thousand dollars ($3,000) a year,. with the privilege to said lessee of another term of five years upon. the same terms and conditions, except that the amount of the annual rent during such second term shall be determined (unless previously agreed upon in writing by the parties hereto) by three disinterested persons to be selected as follows: one by each of the parties to this lease, and the third to be selected by the two persons thus designated or appointed, and the decision of a majority of said three persons shall be binding upon both parties to this lease,. their heirs and assigns.

And the said lessee does covenant to pay the said rent in equal monthly payments in advance, to wit: during the first five years. the sum of two hundred and fifty dollars ($250) on or before the first day of every month during said term.

The said lessee will keep said premises in a neat, clean and respectable condition including the water closets, and will keep the sidewalks in front and along said premises clear of ice or snow, or other obstructions, if such clearing shall be ordered or required by municipal authority.    That said lessee will not make nor suffer any waste thereon or thereof, and will not assign nor underlet said premises nor any part thereof without the consent of the lessor, written and signed on the back of this lease.

Said lessee agrees to make all necessary repairs; also to furnish steam for the comfortable heating of the whole of said building No. 49, and also for the front office room (ground floor) of said building No. 47, and to keep the same at a fair temperature (about 70 degrees Fahrenheit.)

The letting of the leased ground above described as the basement and rear room of No. 47 is subject to the conditions following: The building No. 47 aforesaid has been leased by said Jacob Barge from one John Schulte, the first term thereof having expired on the 15th inst., and said Jacob Barge claims another term of five years from that date, but no longer, and his claim being disputed by said Schulte, Jacob Barge agrees to defend his claim for another term of five years in the courts of this state, including the Supreme Court, and to pay the rent under said "Schulte lease" during the time, to said Schulte or his assigns.

In case said Barge should be dispossessed by said courts he shall not be responsible in damages, but the rest of the rent of three thouand dollars ($3,000) payable by said Schiek to said Barge during the first term shall continue the same without reduction.

In witness the said parties hereto have signed their hands and affixed their seals the day first above mentioned.

Jacob Barge.   (Seal.)

F. Schiek.   (Seal.)

On April 2, 1888, Barge bought of Schulte his building and the ground lease of No. 47 and obtained a conveyance thereof. Schiek was notified and knew of the purchase at the time. On July 1, 1892, Schiek surrendered and yielded up to Barge the basement and rear room of No. 47 and Barge accepted the surrender and took and retained possession thereof. On May 14, 1892, Schiek notified Barge in writing that he proposed to continue under the lease for a second term of five years and asked to have the rent determined by three disinterested persons, and nominated Matthias J. Bofferding as one of such persons and asked Barge to nominate another, expecting the two to appoint a third. But Barge denied the right of Schiek to have such renewal and refused to appoint an arbitrator or grant a renewal.

On July 28, 1892, Barge commenced this action against Schiek to recover possession of the premises No. 49. The complaint stated the foregoing facts and contained a copy of the lease. Schiek answered admitting these facts and the execution of the lease and claimed a renewal. He asked specific performance of the covenant to renew. Barge replied and moved the court for judgment upon the pleadings. Three Judges sat to hear the arguments. *Lochren* and *Hicks* united in the following decision. *Hooker* dissented.

The defendant asks judgment for specific performance of the agreement contained in the lease for its renewal for a second term

of five years, and claims that such agreement for renewal in the original lease related only to that part of the leased premises comprised in number 49 Washington Avenue South.    And whether such agreement for renewal only related to the part of the leased premises comprised in number 49 is the pivotal question in the case; because, if the agreement to renew covered the premises in number 47 as well, the right of the defendant to renewal was lost by his voluntary surrender of that part of the leased premises on July 1, 1892.    He could not give up a part of the leased premises, and compel an unwilling renewal of another part at an appraised rental.

The entire premises contained in number 47 and number 49 are grouped and leased together as a single holding in the original lease, at a single rental in money, and in further consideration of specified heating of other parts of the buildings by the defendant during the term, and the performance of other agreements by him.    It is in no way divided or apportioned as between the several parts of the leased premises.    The agreement for renewal follows in the lease immediately after the principal stipulations as to the first term, and is equally broad, and equally comprises in its language the entire leased premises.    It contains no provisions looking to a separation of the leased premises, and renewal of the lease as to a part only.    But such effect is sought to be spelled out of the subsequent clause in the lease which states that the building number 47 has been leased by Barge of John Schulte, the first term having expired July 15, 1887, and that Barge claims another term of five years, which claim is disputed by Schulte, and Barge agrees to defend his claim by litigation, and pay rent to Schulte.    But it is agreed that, if Barge is dispossessed by Schulte, then two results shall follow:    (1) Barge shall not be responsible to the defendant Schiek for any damages to him; (2) Schiek shall continue to pay to Barge the rent of three thousand dollars per year for the rest of the first term.    If, through such dispossession by Schulte, Barge became unable to renew the lease for the second term, he was not to pay damages, and the provision went no further than to specify the rights and obligations of the parties during the balance of the first term.    There was no provision for renewal as to the part of the premises in number 49.    If Barge, from another than the specified cause, failed or was unable to renew, he would not be protected from damages.    If he contracted to lease lands he did not own, his lack of title would be no defense.    He must acquire the title and fulfill his contract, or pay damages.    In this case he did acquire the title during the first term.

It seems impossible to find in the original lease, by any fair interpretation, an agreement on the part of the plaintiff to give a renewed lease of that part of the premises only which is comprised in number 49, or the terms upon which such a lease could be considered as provided for.    It is true that the money part of the rent could be fixed by appraisal.    But should the defendant under it furnish steam for heating only the whole of building number 49,

or also the specified parts of building number 47? And a like query arises in respect to the care of the sidewalks, and other matters specified. In order to warrant a judgment for specific performance, it must not only be clear that the parties actually made the very contract that is sought to be thus enforced, but that every and all the terms of the contract were agreed to. The court can neither make a contract for the parties nor supply terms which they have omitted or left doubtful. There must be judgment in favor of the plaintiff that he recover of the defendant the possession of that part of the premises described in the complaint as included in number 49 Washington Avenue South, and his costs and disbursements.

Judgment was so entered and defendant appeals. In the progress of the case several amended and supplemental complaints and demurrers thereto were interposed and allowed or overruled; none of them affected the point on which the case finally turned.

*Grethen & McHugh* and *George R. Robinson*, for appellant.

The contention of the defendant is that the lease severs and divides the two properties, that No. 47 was purely incidental to the main subject matter of the contract which was No. 49. However broad the language used may be, the obligation of the parties will be limited to those things which they intended to contract. *Platt* v. *Lott*, 17 N. Y. 478; *Long* v. *Fewer*, 53 Minn. 156; *Bell* v. *Bruen*, 1 How. 169; *Decker* v. *Furniss*, 14 N. Y. 611.

Defendant was entitled to a judgment enforcing a renewal of his lease. *Strohmaier* v. *Zeppenfeld*, 3 Mo. App. 429; *Hug* v. *Van Burkles*, 58 Mo. 202; *Ranlet* v. *Cook*, 44 N. H. 512.

*Albert E. Clarke* and *Wilbur F. Booth*, for respondent.

The plaintiff leased to the defendant the two adjoining buildings known as 47 and 49 for a term of five years at a single rental of $250 per month. This rental was not apportioned between the different parts of the property leased, but was entire; the property was leased as an entirety, and the contract was an entirety. The right to renew was a right to renew as to the identical property leased and the whole thereof, not as to a part of it. Near the end of the term the tenant surrendered part of it and demands the right to renew as to the other part. A landlord might have good reason for desiring to rent the whole property together. He cannot be

compelled to rent part to one person and part to another against his will.

MITCHELL, J. We have examined all of defendant's assignments of error, but it would be as useless to discuss them in detail as it would be tiresome to attempt to follow all the sinuosities of practice which obtained during the progress of this case.

The only assignments of error that have any substance, or at all go to the merits of the case, are those which relate to the construction of the provision in the lease, set up in the complaint, giving defendant "the privilege of another term of five years;" the vital question being whether it applies only to that portion of the leased premises described as No. 49 Washington Avenue South, or to the whole of them, including No. 47.

Our construction is that it has reference to the whole premises, leased as an entirety, and not to a part only. We have arrived at this conclusion on substantially the grounds stated in the memorandum of the majority of the trial judges, and which need not be here repeated. In addition to what is there said, we may add that the argument that the provision for a renewal of the lease did not include No. 47, because at that time plaintiff's estate or interest therein did not extend beyond the first term of five years, would apply with equal force in favor of the proposition that the original letting of No. 47 was not for five years, because it also appears that plaintiff's interest did not then cover the last five days of that term.

If the "privilege of another term" was of the entire premises it follows that, by voluntarily surrendering a part of them, the defendant, in the absence of any agreement to the contrary, waived his right to a renewal or extension of the lease. Indeed, the appellant does not dispute this proposition, his only insistence being that the provision for another term only applies to No. 49. Had plaintiff's title to No. 47 failed or terminated, so that he could only have renewed or extended the lease as to No. 49, a different question would have been presented; but it stands admitted by the pleadings that, before the five-years term had expired, plaintiff, in order that he might be able to perform his covenants, purchased a long-term lease of No. 47, of which fact defendant had notice before he surrendered it to plaintiff.

We have not stopped to consider whether the stipulation is to be construed as one for a renewal by the execution of a new lease, or one for the continuance of the old lease, which should stand as the lease for the extended term, for the reason that we do not think the question material. In either case the option was of the whole premises, and not of a part.

Judgment affirmed.

BUCK, J., absent, sick, took no part.

CANTY, J. I dissent. The lease from Barge to Schiek, dated July 20, 1887, by its terms leases to Schiek the premises No. 49, and the basement and rear room of the adjoining premises, No. 47, for five years at a certain rent, with the privilege to said lessee of another five years upon a rent to be fixed by arbitration. Inserted in a subsequent part of the lease is the following provision:

"The letting of the leased ground above described as the basement and rear room of number 47 is subject to the conditions following: The building No. 47, aforesaid, has been leased by said Jacob Barge from one John Schulte, the first term thereof having expired on the 15th inst., and said Jacob Barge claims another term of five years from that date, but no longer, and, his claim being disputed by said Schulte, Jacob Barge agrees to defend his claim for another term of five years in the courts of this state, including the Supreme Court, and to pay the rent under said Schulte lease during the time to said Schulte or his assigns. In case said Barge should be dispossessed by said courts, he shall not be responsible in damages, but the rest of the rent of three thousand dollars ($3,000.00), payable by said Schiek to said Barge during the first term, shall continue the same without reduction."

Here Barge plainly states that his own title to No. 47 lacks five days of continuing as long as the lease to defendant, Schiek, and even for that time his claim to it is in dispute, and he incurs no liability except to defend it in the courts, and, if he does so, shall not be responsible for damages if he is dispossessed, but the rent "payable by said Schiek to said Barge during the first term shall continue without reduction." Does not this fairly imply that, dur-

v.57M.—11

ing the second term of the lease to Schiek, there may be a reduction on account of the loss of 47? How much reduction would be a question for the arbitrators. Is it not fairly to be understood from this unskillfully worded lease that Barge does not and cannot rent Schiek the premises No. 47 for the second term at all? Can there be any doubt, from the reading of the whole instrument, that this is the meaning of the parties?

"The letting of the leased ground above described as the basement and rear room of number 47 is subject to the conditions following." What conditions is it subject to? The condition that Barge has only a limited interest in No. 47, which may fail even long before the end of the first five years. What letting is subject to these conditions? The letting for the first five years, or the whole ten years? Can there be any doubt as to the meaning of the parties on this point? When the different parts of this lease are construed together, the meaning of the parties is obtained by inserting after the description of No. 47, where it first occurs in the lease, the provision specifying the extent of the interest of Barge and the rights of Schiek in No. 47, as first above quoted. Then follows the clause of leasing for five years, with the privilege of five years more.

The lease is poorly drawn, and it may be suspected that it was drawn on a printed blank which did not have space enough at the proper place to insert at length the extent of Barge's interest, and the rights to be given Schiek, in No. 47, but the meaning is the same as if these things were there inserted.

It is not a new rule of construction which interprets a poorly drawn and inaptly worded instrument according to the real meaning of the parties when that meaning can be gathered with reasonable certainty from the face of the instrument by construing its different parts together and when a more strict and literal interpretation of it would defeat the intention of the parties, and work out results not contemplated by them. This lease must be construed in the light of the conditions that existed when it was made. The lessor cannot, by subsequently acquiring a greater interest in No. 47, procure a different construction.

But whatever difficulty there was in construing the lease as originally drawn, it seems to me the parties have removed that difficulty by the surrender as to No. 47. That surrender was not a

mere abandonment by Schiek, but a mutual and executed contract, by which No. 47 was taken out of the lease,—taken out of it not only for the remainder of the first five years, but also for the second five years. It cut the leased part of No. 47 out of the description of the leased premises for all future purposes. It seems to me that it is a vital point in this case that the provision in the lease giving Schiek an option of a second term of five years is not a covenant for renewal, which would require him to invoke the aid of a court of equity in an action for specific performance, in which he might be defeated by one of the very technical defenses peculiar to that action but it is a covenant for extension of the original lease at his option, which, when he exercises the option, gives him a legal estate for the whole ten years, without any other act. This distinction is discussed at length, and the authorities cited, by Dixon, C. J., in *Orton* v. *Noonan*, 27 Wis. 277. "It (the extension of the lease) gives to the lessee or tenant what he claims, and by a more indefeasible title." Id. 282.

The language of this lease is, "with the privilege to said lessee of another term of five years," and, when the option is exercised, it is an extension of the original lease, and requires no new writing, but operates as a continuous lease. *Orton* v. *Noonan*, 27 Wis. 283. See, also, Taylor, Landl. & Ten. (8th Ed.) § 332. The option being exercised, the second five years of this estate are as invulnerable as the first five years, and have all the attributes of a vested legal estate in possession, which will not be defeated or affected by any such slight uncertainty or deficiency in the terms of the contract, or any such slight doubt as to the meaning of the parties, as will defeat an action for specific performance of a mere executory contract. Whether the surrender of the premises No. 47 would defeat the specific performance as to No. 49 of a mere covenant for renewal of the lease, as assumed by the majority of the court below, the distinction as to which the majority of this court deems immaterial, it is not necessary to inquire. On well-established principle this is not such a case. On the contrary, it is a case where the second five years is as much a vested legal estate in possession as the first five years, and can no more be defeated by the surrender of a part of the premises than could the balance of the first five years left after such partial surrender. If in such a case

the leased premises are severable during the first five years, they are equally so during the second five years.

The judgment appealed from should be reversed.

(Opinion published 58 N. W. 874.)