# Commonwealth *v.* Fisher, Appellant.

*Criminal law—Murder—Misconduct of juror—" Two term rule."*

1. A judgment on a verdict of guilty on a murder trial will be set aside where it appears that the jury slept in a hotel, where they walked and lounged and mingled with the other guests, that they went separately with tipstaves to drinking saloons, to drug stores and to barber shops, that some of them drank in the saloons, and that they were furnished with beer and whisky which they drank in their room in the hotel.

2. It is the duty of the court to see that the jury, after they are charged with the prisoner, are not exposed to contact or do not communicate with outsiders either during the progress of the trial or after they have returned to their room to deliberate and make up their verdict; and it is also the duty of the court not to permit the jury to receive and use intoxicating liquors while they have the prisoner in charge.

3. It seems that the right of a prisoner to be discharged under the "two term rule," is essentially a habeas corpus proceeding under sec. 54 of the Act of March 31, 1860, P. L. 427, which is a re-enactment of the Act of February 18, 1785, 2 Sm. L. 275, sec. 3. This proceeding is separate and distinct from the trial of the cause and is not reviewable on an appeal from a conviction at the trial.

Argued Oct. 11, 1909. Appeal, No. 198, Jan. T., 1909, by plaintiff, from judgment of O. & T. Northumberland Co.,• Feb. T., 1907, No. 2, on verdict of guilty of murder of the first degree in case of Commonwealth v. Henry Fisher. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Indictment for murder.    Before SAVIDGE, P. J.

At the trial the jury returned a verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

The prisoner moved for a new trial, alleging among other grounds the gross misconduct of the jurors during the progress of the trial.    The court overruled the motion.

*Error assigned* amongst others was the refusal of the court to set aside the verdict on the ground of the misconduct of the jurors.

*J. A. Welsh*, with him *John I. Welsh* and *C. K. Morganroth*, for appellant.—From the time when the right of a trial by jury was established by the English people, down to the present day, the unbroken rule of courts has been that juries in trials involving human life should be kept aloof, and free from all outside influences.    This court has reiterated this basic principle in a long line of cases: Kramer v. Kister, 187 Pa. 227; Moss v. Com., 107 Pa. 267; Com. v. Eisenhower, 181 Pa. 470; Com. v. Manfredi, 162 Pa. 144; Peiffer v. Com., 15 Pa. 468; Hilands v. Com., 111 Pa. 1.

*D. W. Shipman*, with him *A. K. Deibler*, district attorney, and *H. W. Cummings*, for appellee, cited as to the conduct of the jury: Com. v. Thompson, 4 Phila. 215.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

More than half a century ago Chief Justice GIBSON, speaking for this court in Peiffer v. Com., 15 Pa. 468, said (p. 470): "Even the forms and usages of the law conduce to justice; but the common law, which forbids the separation of a jury in a capital case before they have been discharged of the prisoner, touches not matter of form, but matter of substance.    It is not too much to say that if it were abolished, few influential culprits would be convicted, and that few friendless ones, pursued by powerful prosecutors, would escape conviction. Jurors are as open to prejudice from persuasion as other men, and neither convenience nor economy ought to be consulted,

in order to guard them against it. Let them have every comfort compatible with their duties; but let them not be exposed to the converse of those who might pervert their judgment."

In Com. v. Roby, 29 Mass. 496, the learned Chief Justice Shaw speaking for the supreme judicial court of Massachusetts on the same subject said (p. 519): "The rule of the authorities is, that where there is an irregularity which may affect the impartiality of the proceedings, as where meat and drink or other refreshment has been furnished by a party, or where the jury have been exposed to the effect of such influence, as where they have improperly separated themselves, or have had communications not authorized, there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly, and may have been corruptly done; or where the irregularity consists in doing that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment, as where ardent spirits are introduced, there it would be proper to set aside the verdict, because no reliance can be placed upon its purity and correctness."

These cardinal rules should control courts in dealing with the conduct of jurors, and especially in cases where a defendant is on trial for his life. He has the right to be tried by a jury of his countrymen who are free from bias and prejudice and who are permitted to hear and deliberate upon his case from the evidence which is produced on the trial, without any communication or interference by outside parties. It is upon such evidence that the guilt or the innocence of the defendant should be determined, and he has the right to demand of the court that no other evidence shall be heard or considered by the jury. It is also the duty of the court to see that the jury, after they are charged with the prisoner, are not exposed to contact or do not communicate with outsiders either during the progress of the trial, or after they have returned to their room to deliberate and make up their verdict. In other words, from the time the jury is sworn until they have returned their verdict to the court, they must be kept entirely aloof and free

from contact or communication with other parties than the bailiffs who have them in keeping during the trial. This is absolutely necessary if the case is to be tried by an impartial and unbiased jury, and the constitutional rights of the defendant are to be protected.

While the jury are to be kept free from outside influences during the trial, it is equally important that the jurors be what the law requires them to be, "sober, intelligent and judicious persons," and that they continue to be such until the verdict has been rendered and the guilt or innocence of the defendant has been determined. It is for this reason that courts of justice will not permit a jury, charged with passing upon the life of a prisoner, to receive and use intoxicating liquors while they have the prisoner in charge. The twelve men who have been summoned and sworn to pass upon his guilt or innocence should be free from the effects of intoxicants which, in the language of Chief Justice SHAW, disqualify them for a "proper deliberation and exercise of their reason and judgment."

Henry Fisher, the defendant, was indicted in the court of oyer and terminer of Northumberland county and was convicted of murder of the first degree. Upon appeal to this court, the judgment was reversed and a new trial was ordered. Fisher was again tried, convicted of murder of the first degree, and has taken this appeal. Among his other complaints, he alleges serious and grave misconduct on the part of the jury which, he contends, has deprived him of his constitutional rights. We agree with him, and are compelled to reverse the judgment on that ground.

The learned court below was asked to correct the misconduct of the jury by granting a new trial, and we think it evident from the opinion of the learned judge refusing the new trial, as well as the concessions made by the counsel for the commonwealth in his argument to this court, that a new trial should have been granted. We will not go over in detail the testimony disclosing the misconduct of the jurors during the trial and after they had retired to deliberate upon the verdict; we will refer to it briefly.

It is apparent that Northumberland county does not have proper and suitable accommodations for jurors empaneled in homicide cases. This is conceded by counsel on both sides of the case, and is made further apparent by the fact that this court has reviewed two capital cases from the county and in both cases we were required to pass upon the misconduct of the jurors. In the present case the jury was sworn at 7:30 P. M. on Wednesday and returned a verdict the following Saturday about 2:30 P. M. The jury were put in charge of two tipstaves, one of whom, it is manifest, is a man whose many years unfit him for the position. The usual oath was administered to these tipstaves in which they swore that they would not permit any person to speak to the jurors, nor speak to them themselves, nor would they speak to them in relation to the trial except to ask if they had agreed upon their verdict or to return to the court room, or concerning their health, comfort and necessities while in their custody. During the trial while the jury was not in court, they were kept at a hotel in the busiest part of the town which, for the reasons shown by the depositions, was an improper and unfit place. When they left the jury box they were required to pass through the crowd in the court room and in a hall; and they entered the hotel through the corridor where they came in contact with the guests of the house. It seems that the sessions of the court were extended into the night. A short time after the jury had been sworn, one of the jurors left his fellows and went with a tipstaff to a saloon and there both he and the tipstaff obtained beer and cigars. The juror testified that while he was in the saloon he did not use the telephone, but in this he was positively contradicted by the tipstaff who testified that the juror did talk on the telephone with some unknown person. Of course what was said to him over the telephone could be known only by himself and the person with whom he conversed. The tipstaff in the first part of his examination testified that he heard the conversation, but finally admitted that he did not know what was said by the party talking with the juror. It appears from the testimony that this juror was absent from the other jurors without their knowledge.

On Thursday night, about midnight, after the jurors had returned to their room in the hotel, two of their number left the room and the hotel with a tipstaff, and went across the street to a saloon, some distance away. There were other persons in the saloon who were discussing the topics of the day. It may well be assumed that one of the topics under discussion was the Fisher homicide trial which then seemed to be exciting much attention in that community. While in the saloon, one of the jurors and the tipstaff drank at the bar, the other juror during the time was some distance apart from them, near the wall. The latter was questioned in regard to the Fisher case until the tipstaff interfered. The extent of this conversation does not clearly appear from the testimony. While the tipstaff testified that there was no conversation with the juror, yet his recollection is clearly at fault if other testimony on the subject is credible.

The jurors were frequently in the corridor of the hotel where the other guests assembled and conversed. They were thereby thrown in close contact with outsiders and could hear their conversation. It was testified by a disinterested witness that on one of these occasions, one of the jurors was spoken to. This the tipstaff denied. During the time the jurors were walking or lounging in the lobby they were necessarily separated, and what they heard and with whom they conversed cannot positively be known. It is apparent, however, that there was an opportunity for them to be approached upon the subject of the trial. On one occasion it appears that three of the jurors were in a toilet room with another party and with the tipstaff on the outside and not in a position to know what was taking place between the jurors and the other party. On another occasion, while the court was in session, certain jurors left the box, passed through the audience in the court room and the crowd in the hall to the toilet room unaccompanied by any officer. On another occasion a tipstaff took two or three of the jurors to a barber shop. Again, one of the jurors left his colleagues and went to a drug store so frequently that the tipstaff who accompanied him complained of it. On these occasions, the juror got "stomach medicine" and cigarettes.

In addition to this conduct of some of the members of the jury in separating themselves from their colleagues, and going to a drug store, to a saloon outside of the hotel where they were stopping, and to barber shops, it appears from the testimony and it is conceded that on several occasions they had both beer and whisky in their room at the hotel. The quantity of each is not known; nor is it known who furnished the greater part of it. On some occasions the tipstaves would bring it to the jury, on others it would be brought by the bell boys at the hotel. One juror said he had a pint of whisky, another said that he ordered whatever whisky he needed and got it, and another spoke of the quantity of beer used. The beer was taken to the room in bottles and a lard can. One juror testified that he told the tipstaff what liquor he wanted and he got it, and another, that the jurors themselves brought liquor to the room. During the drinking it appears that the tipstaves and the jurors "were talking backwards and forwards." It seems from the testimony that the tipstaves also participated in the drinking. One of the tipstaves testified that the bell boys brought the whisky to them, but he did not know who ordered it.

We will not go further into the testimony showing the misconduct of the jurors who were impaneled to determine the guilt or innocence of the defendant. What has been stated was amply sufficient to require and compel the learned judge below to set aside the verdict and grant the defendant a new trial. In the recent civil case of Mix v. North American Co., 209 Pa. 636, where the trial judge with a knowledge of the misconduct of the jury declined to set aside the verdict, our Brother Brown, in speaking for the court and reversing the judgment against the defendant for such misconduct, said (p. 645): "Here the deviation was gross; officers were utterly regardless of their oath in allowing the jury to separate, and the jurors themselves were heedless of their duty in doing so; and taking their separation into consideration in connection with their communication with outside parties after they had retired to their room and with the gambling that was continued only after money had been sent for and received from

the outside, their misconduct cannot escape judicial condemnation." This language may well be applied to the case in hand. There was apparently no effort to seclude this jury from contact with the public. They were permitted to pass through the crowds in the court room, in the hall, and in the corridor of the hotel. They were permitted to go to saloons, a drug store, and barber shops, where they came in contact with outsiders. They spoke with other parties, and if the tipstaff is to be believed, one of the jurors who did communicate with an outsider testified falsely to the fact. In a recent appeal from this same court, we declared it to be a reprehensible practice to permit jurors during a murder trial to separate so far as to go to a barber shop although under the charge of an officer; and we further emphatically said: "To permit them to separate and some of them to go to a public room where they might be brought in contact and communication with others was a palpable violation of an unbroken practice of the courts of oyer and terminer, especially in capital cases, and meets with our condemnation:" Com. v. Gearhardt, 205 Pa. 387, 393. In the same case we also said (p. 393): "We unhesitatingly condemn such indifference to their oath on the part of the officers and such heedlessness of duty on the part of the jurors, for they doubtless heard the oath administered to the tipstaves." If we add to the separation of the jury and its attending circumstances, the fact that both whisky and beer in unknown quantities were taken to the jury room at the hotel and were consumed by the jurors in the manner shown by the evidence, there can be no question that the learned trial judge abused his discretion when he refused to set aside the verdict. It is seldom, we are pleased to say, that this court is called upon to review a case where the trial court has permitted a verdict of murder of the first degree to stand which was obtained under such circumstances. Verdicts obtained under circumstances of this character cannot receive the approval of a judge or court which has proper respect for and enforces the constitutional rights of the citizen. The defendant had a right to be tried by a jury, who were free from the contamination and influence of outsiders and were above

suspicion of being intoxicated while in the discharge of their duties. For such gross misconduct of the jury as appears from the evidence in this case, we are compelled to sustain the assignment of error and set the verdict aside.

We do not deem it necessary to consider the other assignments of error. We may suggest, however, that the right of the defendant to be discharged under the "two term rule" is essentially a habeas corpus proceeding under sec. 54 of the Act of March 31, 1860, P. L. 427, which is a re-enactment of the Act of February 18, 1785, 2 Sm. L. 275, sec. 3. This proceeding is separate and distinct from the trial of the cause and is not reviewable on this appeal: Clark v. Com., 29 Pa. 129. If, however, the assignment is considered it must be overruled, because the continuance was caused by the condition or conduct of the defendant himself. He is therefore not in a position to take advantage of the statute.

While it is unnecessary to pass upon the assignments alleging error in overruling the defendant's challenge for cause to certain jurors, we may suggest, as the case must be retried, that the rule which the court should observe is well stated in Staup v. Com., 74 Pa. 458; O'Mara v. Com., 75 Pa. 424; and Allison v. Com., 99 Pa. 17. The next will be at least the third trial of the defendant for this offense, and as the people of Northumberland county generally are familiar with the case, the learned trial court may have occasion to apply the rule applicable to challenges of jurors who have heard or read the testimony given on a former trial.

The judgment is reversed, and a venire facias de novo is awarded.