13128

RALPH v. SOUTHERN RAILWAY CO.

(2 cases)

(158 S. E., 409)

*Messrs. Adam H. Moss, Frank G. Tompkins* and *P. H. Haigler,* for appellant,

*Messrs. Wolfe & Wolfe,* for respondents,

April 21, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

These cases were heard together on Circuit, and, by agreement of counsel, the appeals are heard together.

Henry C. Ralph and Bessie E. Ralph are husband and wife, and reside near the City of Orangeburg. The evening of May 13, 1929, they were riding in their automobile and essayed to cross the tracks of the Southern Railway Company where they intersect with Russell Street, in the City of Orangeburg. There was a collision between their car and a passenger train on defendant's road. These actions are brought to recover for damages for injuries to their persons and the automobile, which injuries it is alleged were due to the negligence of the defendant. The cases were tried before Judge Mann and a jury, and resulted in verdicts for the plaintiffs. A motion for new trial was made, and refused. It is around that motion and its refusal that the controlling question of the appeals centers. The question, which in the

judgment of the Court will dispose of the appeals, is found in the issues made by Exceptions 4 and 5. These issues may be condensed and thus stated: That his Honor, the presiding Judge, visited and inspected the crossing in question, during the trial, without the knowledge of counsel and without the presence of the jury; that he was influenced by this inspection in his understanding and application of the oral testimony descriptive of it, without giving counsel for defendant notice of his intention to view the locus and without giving counsel opportunity to argue the testimony as understood and applied by the Court after such inspection; that the motion for new trial was decided adversely upon testimony not properly before the Court.

At page 283, folios 1129, 1130, and 1131, of the transcript of record, it appears that his Honor referred to the acutely disputed question of the position of the flagman at the railroad crossing at the time of the collision, and he frankly states that there is no question in his mind that at the time the train struck the automobile the flagman was out in the street.

That was one of the most warmly contested issues of fact in the case. Much testimony was given about it. It would seem to be clear from the words of the Judge, and his refusal of the motion for new trial, that his inspection of the locus decided this issue, in his mind, adversely to the contention of the counsel for defendant. He said:

"I drove by the place just to see if I had it figured out clearly in my mind, I thought I knew that crossing like a book, and I thought I could make a plat of it almost with my eyes shut, but I found that there were several errors that I might have made with reference to the point of compass. If that flagman was there in the center of Russell Street, in a line with that red light, I can't see why he had to run and get out of the way of the automobile which was approaching from the right side of the street, and when it stopped, .

after the collision, landed on the other side of the street, up against the curbing next to the railroad station."

"He would not have had to have gotten out of the way of that car unless he had been over on that side, out of his place; and to be in his place he must have been in the center of the street, as I gather it, looking this way. He must have been on the right hand side of the street. That seems to be the logical reason for his jumping. If he had been in the center of the street, out about the little red light, he would not have had to jump. It is possible that the jury, in determining that the station was not properly flagged, if they did determine that, may have taken that into consideration."

"The way the street and railroad cross at that point, at angles, loaded cars on that spur track, up against that little police station, would obstruct the view of a man in an automobile going over the crossing from this way."

The cardinal question for our determination is: Was it error for the presiding Judge to visit and inspect the crossing, the scene of the collision, without notice to counsel, or parties, and so without their consent, and without the presence of the jury, and to decide the motion for new trial without giving counsel opportunity to argue the evidence he had obtained upon his inspection of the locus, and by predicating his refusal of the motion for new trial, in part at least, on information so obtained by his personal view of the locus?

Preliminary to the discussion of the question, it is eminently proper that we say that every member of this Court has for the Judge who presided at this trial the highest regard and respect and unbounded confidence in his personal and judicial integrity. The writer of this opinion has known him, and has been his friend since his boyhood, and was the friend of his gallant and honored father. It will then be readily understood that no slightest criticism is intended in this opinion of the motives of this honored Judge.

In the judgment of the Court, the viewing and inspection of the premises in the circumstances cited was an inadvertence, the effect of which did not occur to his Honor. Unfortunately it may not be classed as harmless error, and thus passed over, because of the danger of thereby establishing a precedent fraught with serious possible consequences.

It is the boast of our Anglo-Saxon system of jurisprudence that trials in our Courts of law are conducted under established rules of procedure which insure a fair and open trial, where everything is done in the open, the jurors are drawn and sworn in open Court, the witnesses are sworn and testify in open Court, the Judge's rulings and decisions are made in open Court, and everything done is made of record. Litigants are guaranteed the right to be heard by counsel or in person at every stage of the trial and upon every phase of it. So jealous is the law of the untarnished reputation of its Courts for the strictest adherence to the fixed rules of legal procedure that it will annul and set aside any action of the Courts taken in disregard of them. Note the meticulous care with which juries and jurors are guarded against influence from any source or direction not under the control of the Court. A jury as a whole, and jurors individually, are not permitted to view the locus of a crime, or of the occurrence which gives rise to the suit except by order of the Court and under the supervision of its officers. Section 583, Code of Civil Procedure 1922, gives to the presiding Judge power to send the jury to view the premises at the request of either party, when in his discretion, it is advisable to do so. The textbooks and reports are full of instances in which unauthorized view or inspection by the jurors, or some of them, has been held to require the setting aside of a verdict.

"That a view unauthorized by the order of the Court is improper, and that the information thus obtained should be rejected may be easily admitted. * * * But it is im-

portant to distinguish the reasons for the impropriety. * * * "

The author illustrates his statement with this citation: "1893 : *Mitchell, J., In Aldrich v. Wetmore,* 57 Minn., 161, this is held.: 'The theory of jury trial is that all information about the case must be furnished to the jury in open Court, where the Judge can separate the legal from the illegal evidence, *and where the parties can explain or rebut it.* (Italics added.) If jurors were permitted to investigate out of Court there would be great danger of their getting an erroneous, or one-sided view of the case which the other party, prejudiced thereby, would have no opportunity to contest or explain.' 2 Wigmore on Evidence (1st Ed.), p. 1367, § 1166.

"A new trial should ordinarily be granted when jurors without authority of the Court, or consent of parties, have examined, or inspected a place or thing, which is the subject of conflicting evidence, and especially where the examination, or inspection, was made without notice." 29 Cyc., 801. See, also, *Commonwealth v. Fisher,* 226 Pa., 189, 75 A., 204, 26 L. R. A. (N. S.), 1009, 134 Am. St. Rep., 1054; *Kress & Co. v. Sharp,* 156 Miss., 693, 126 So., 650, 68 A. L. R., 172.

"It is reversible error to permit evidence in any form to be received during the view." *State v. Slorah,* 118 Me., 203, 106 A., 768, 4 A. L. R., 1256.

A new trial will be granted where the conduct of a jury amounts to the consideration of evidence not legally introduced in the case. *State v. Boggan,* 133 N. C., 761, 46 S. E., 111.

So much is cited to show the extreme care with which the law protects the verdicts of juries from being influenced by any evidence which is not presented in open Court, under the sanction of the Court and the sanctity of an oath.

We take it that it will be conceded that the Judge in the conduct of the case must be even more careful to see that his every action is governed with scrupulous attention to the

rules so long fixed and so inflexibly adhered to throughout all the years. It seems too plain for argument that a presiding Judge may not permit his judgment to be influenced by any information not obtained through the regular channels of legal procedure. There is not lacking authority to support this view.

The case in our own reports most directly in point is that of *Lee v. N. W. Railroad Co.*, 84 S. C., 139, 65 S. E., 1031, 1037. It is true that there the Court refused to order a new trial. In order that the reason for the ruling of the Court may be fully understood, we quote from the opinion: "The fifth exception cannot be sustained, because it does not appear in the 'case' that the Judge inspected the place of the accident after the trial. For aught that appears in the 'case' his inspection may have been made during the trial and along with the jury. He had the right, under the statute, to send the jury to inspect the place, and of course the right to go with them. We are bound to assume that the motion for a new trial on the minutes was heard only upon the testimony properly before the Court, unless the contrary is made to appear in the 'case.' It certainly should have been so heard, and the decision based thereupon."

This language means simply that, if it had appeared in the "case" that the Judge had decided the motion on testimony not properly before the Court, that is to say, upon evidence which he had obtained upon a view of the premises, without notice to or consent of counsel, and without the presence of the jury, then a new trial would have been granted. Now, in the matter which we are considering, it appears in the transcript of record, and it is nowhere denied, that the trial Court visited and inspected the crossing in question after the conclusion of the testimony, and before the jury was charged, without the knowledge of counsel engaged in the case, and without the presence of the jury. The first notice which counsel had that the Court had visited and inspected the crossing was that contained in the remarks of

the Court made in refusing defendant's motion for a new trial, on the minutes, after all arguments for and against the motion had been concluded.

The Judge himself at folios 1129-1131 frankly states that the Court visited the premises, and one is compelled to conclude from the expression of the Court, "I drove by the place," etc.; that he went there alone or without notice to counsel. Applying this fact to the language of the Court in the *Lee case, supra,* that the motion for new trial should be decided "upon testimony properly before the Court," the conclusion follows inevitably that it was error for the Judge to visit the crossing as he did, and that it is ground for a new trial.

In *Parrott v. Barrett,* 81 S. C., 255, 62 S. E., 241, 243, this occurs: "We know of no law which makes it the duty of the Court to view the premises in partition proceedings. Civ. Code 1902, § 2950 [now 583 Code Civil Procedure 1922] provides that the jury, at the request of either party, may be taken to view the place or premises relating to the contest, when it appears to the Court that such view is necessary to a just decision; but in *Bodie v. Ry. Co.,* 66 S. C., 315, 44 S. E., 943, where the jury informed the Judge that a visit to the place would not benefit them, it was held to be wholly within the discretion of the Judge whether he would send the jury to view the place. For greater reason, if there is no statute requiring the Judge to view the premises, it is not error to decline to do so. A far more serious question would have arisen if the Judge had, at the mere request of one party, viewed the premises, and interposed his opinion, formed upon such view, against the opinion of those specially charged with that duty."

If it be suggested that this declaration is *obiter dicta,* it is nevertheless the scintillating indication of what would have been the opinion of the Court in a proper case. It is the suggestive opinion of a Court composed of jurists of outstanding ability and reputation, a Court composed of Chief Jus-

tice Y. J. Pope, Associate Justice, afterwards Chief Justice, E. B. Gray, Associate Justice, afterwards Chief Justice, Ira B. Jones, and Associate Justice C. A. Woods, afterwards a Judge of the United States Circuit Court of Appeals.

There is authority from other jurisdictions to the same effect whose decisions are entitled to respect.

In the case of *Atlantic & B. Ry. Co. v. City of Cordele,* a Georgia case, reported in 125 Ga., 373, 54 S. E., 155, this is found: "The presiding Judge, who heard the issues involved in the application for injunction, including the questions of whether the required removal was in fact for the convenience and welfare of the public or only for the benefit of another corporation, whether there was a necessity for the proposed change, whether the proposed act would be unreasonable or arbitrary, and what would be the effect, if any, upon the operation and property of the plaintiff, having stated, in his order refusing to grant an injunction, that he heard evidence and argument, and also that 'this order (is) granted after a personal inspection and observation of the tracks and surroundings of the street crossing and tracks involved,' and it thus appearing that the Judge's personal inspection and observation were made an integral part of his judgment, and it not appearing that this was done with the consent of counsel or parties, the judgment will be reversed, with direction that the case be heard upon the evidence which may be introduced, unless inspection by the Judge as part of the proceedings be had with the consent of both parties."

In *Anderson v. Leblang,* 125 Misc. Rep., 820, 211 N. Y. S., 613 (Supreme Court, Appellate Term), the Court held: "Since the Court has denied the plaintiff any relief, it is fair to assume that the trial Justice was, to some extent, controlled by what was revealed by his view of the premises. That view was not consented to by the parties, and was not made in the presence of the plaintiff, and no opportunity was given to the plaintiff to explain anything disclosed by

the view. In the absence of the consent of the parties, the Court could not view the premises in order to determine whether plaintiff had or had not preformed."

In 29 Cyc., 1008, it is said: "The Court should not examine witnesses in the absence of the parties and without notice."

By parity of reasoning it holds good that the Court should not obtain evidence by view of the locus in the absence of the parties and without notice.

In the case of *Denver Omnibus & Cab Co. v. J. R. Ward Auction Co.,* a Colorado case, reported in 47 Colo., 446, 107 P., 1073, 19 Ann. Cas., 577, it was held that for the trial Judge in an accident case, without the knowledge of either party, to visit the scene of the accident and act upon his investigation, was reversible error. We have not access to this case, and the reference is found in the note to another case.

It would seem to be clearly established that a judgment founded upon evidence derived from a view or inspection of the premises by the Judge who renders it, without notice to or consent of counsel or parties, is reversible error. An analysis of the record in the present cases discloses that his Honor, the presiding Judge, founded his order refusing the motion for a new trial in part upon the information which he obtained when he drove by and viewed the crossing where the collision occurred, without notice to or consent of counsel or parties, and in the absence of the jury. This was reversible error.

Inasmuch as the inspection by the Court was made before the charge to the jury, it is a fair inference that that which the presiding Judge learned by his personal inspection had some weight with him and influenced in some degree his charge to the jury.

In view of the fact that there must, for the above cause, be a new trial, it is deemed best not to discuss the issues

made by the other exceptions, which relate mainly to the facts as they are disclosed by the testimony.

The judgment of the Circuit Court is reversed, and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTH-RAN, STABLER and CARTER concur.

Per Curiam.

A petition for rehearing is presented, the burden of which is that the Court erred in stating that the Circuit Judge viewed the premises before the charge, and that that might have had some weight and influence in his charge to the jury; that the Circuit Judge looked at the premises on his way from home to Orangeburg, but after the trial had been concluded for some days.

At page 2, folios 7-9, of the transcript of record, this occurs: "Some time after the conclusion of all the testimony, *and before the jury was charged* (italics added), the Court inspected the crossing in question, without the knowledge of counsel in the case and without the presence of the jury. The first notice which counsel for the defendants had of the fact that the Court had visited the premises, and inspected the crossing in question was that contained in the remarks of the Court, made in refusing the motion for new trial after all arguments for and against this motion had been concluded."

Counsel for respondents, who now present the petition for rehearing, agreed in writing to this statement as a part of the return upon which the appeal was heard. They cannot now contradict it and say it was error for this Court to rely on it.

However, if the utterance complained of were omitted from the opinion of the Court, it would not affect it, because that opinion is predicated upon the fact that the Circuit Judge based his order refusing the motion for new trial upon what he saw upon his view of the premises. At page 283 of the transcript of record, folios 1129-1131, he said

this : "I drove by the place just to see if I had it figured out clearly in my mind, I thought I knew that crossing like a book, and I thought I could make a plat of it with my eyes shut, but I found there were several errors I might have made with reference to the point of compass."

This does not tally with the suggestion in the petition for rehearing that the Judge looked at the premises on his way from home to Orangeburg.

The remainder of the Judge's remarks were in reference to the place of the flagman, and show unmistakably the extent to which his refusal of the motion for new trial was influenced by his view of the premises.

There is no merit in the petition for rehearing. It is refused.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER, CARTER and BONHAM concur.