23347

Philip A. BAUGUS and Dianna T. Baugus, Respondents v. Howard WESSINGER, Alma S. Wessinger, Mary Ester Wessinger, Freida W. Huffsteller, and Bobby Wessinger; of whom Howard Wessinger and Alma S. Wessinger are Appellants and Susan S. CAMPBELL, Respondent v. Howard WESSINGER, Alma S. Wessinger, Mary Ester Wessinger, Freida W. Huffsteller, and Bobby Wessinger; of whom Howard Wessinger and Alma S. Wessinger are Appellants.

(401 S.E. (2d) 169)

Supreme Court

*Robert L. Hallman,* Columbia, *for appellants.*

*John E. Cheatham,* Lexington, *for respondents.*

Heard Jan. 9, 1991.

Decided Feb. 11, 1991.

TOAL, Justice:

This appeal involves whether a portion of a roadway has been completely dedicated for public use, or whether a landowner is entitled to blockade the roadway portion as private property. The special referee in this case granted summary judgment in favor of the respondents, ruling that the roadway was completely dedicated. We reverse and remand.

## FACTS

On June 1, 1962, J. Earl Wessinger (J. Wessinger) conveyed 5.34 acres of land on Lake Murray to James R. Goodman. A plat of the property was prepared following the transfer to Goodman and the land was subdivided and named V.I.P. Estates. A dirt road was constructed on request by Lexington County, pursuant to then-existing county policy of scraping roads on private property. Lots 7 through 20 were sold by Goodman with reference to this then unnamed road. It ap-

pears Goodman intended to have six additional lots on the westernmost part of the 5.34 acre tract, but for some reason instead chose to reconvey this triangle-shaped portion of the land to his grantor, J. Wessinger. The deed specifically reconveys the entire triangle and thereafter states the intention of the grantor to convey all right, title, and interest in the 5.34 acre piece of property with the exception of lots 7 through 20.

Shortly after the construction of the first roadway, which runs in a westerly direction from what is now known as Lake Tide Drive, the County of Lexington also constructed a dirt roadway running generally in a northerly direction, but curving in an easterly direction towards the first roadway. This second road emanates from what is now known as Shady Acres Drive. These two roadways stopped short of connection with one another; the second roadway terminating near the boundary line of the triangle-shaped property reconveyed to J. Wessinger.[1]

The two roadways became one when they were connected by county maintenance crews to facilitate maintenance work on the roads, the connection serving to remove the necessity for bulldozer turnarounds. This single road for a time was referred to as Blackberry (or Lover's) Lane. Lexington County discontinued maintaining the entire roadway after a period of time pursuant to a new policy of ceasing to maintain any roadway not officially placed into the county system.

In 1964, J. Wessinger conveyed the triangle-shaped piece of property, along with other lands, to his son Howard Wessinger (H. Wessinger) and Howard's wife, Alma. After the joining of the roads by the county for maintenance purposes, H. Wessinger testified that he put up a barricade across the roadway running across his property, removing it for the county only when it was necessary for the county maintenance crews to make turnarounds. The barricade was allegedly put up for the purpose of discouraging vandals and partygoers who were using the roadway to get to Lake Murray.

Apparently Lexington County then discontinued maintaining the roadways with the exception that 1,475 feet of the roadway running from Lake Tide Drive westerly to H.

---

[1] *See* Appendices I and II.

Wessinger's eastern boundary line was taken into the county roadway system and given the name of Nel La Lane. In 1968, H. Wessinger allegedly permanently blockaded the roadway access from his property's eastern boundary to its western boundary. This blockade allegedly has continued to the present day.

The respondents Philip and Dianna Baugus and Susan Campbell (respondents) are landowners residing to the west of H. Wessinger's triangular-shaped property parcel. They brought suit seeking access over H. Wessinger's property, their theory being primarily that Nel La Lane extended out westerly across H. Wessinger's land, and that the blockaded portion of the roadway on H. Wessinger's land is a public road by way of dedication. The respondents also sought access by virtue of the theories of easement by implication, necessity, and/or estoppel. The action was referred to a special referee. The special referee ruled by way of summary judgment that the only theory of merit argued by the respondents was the "dedication" theory, but that the respondents were entitled to summary judgment on that theory. This Court stayed the special referee's order that H. Wessinger open the roadway, pending H. Wessinger's appeal.

## LAW/ANALYSIS

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, ___S.C. ___, 392 S.E. (2d) 460 (1990). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts. *Gilliland v. Elmwood Properties, Inc.*, ___ S.C. ___, 391 S.E. (2d) 577 (1990). All ambiguities, conclusions, and inferences arising in and from the evidence must be construed most strongly against the movant. *Standard Fire Ins. Co., supra.*

As an initial matter, the special referee refused to grant summary judgment for the respondents on theories of easement by implication, necessity, and/or estoppel. The respon-

dents argue these grounds on this appeal as possible additional sustaining grounds. We agree with the special referee that summary judgment is inappropriate on these grounds. We now proceed to address the respondents' theory of "dedication."

It is true that generally, when an owner of land has it subdivided and platted into lots and streets and sells and conveys lots with reference to the plat, he thereby dedicates the streets to the use of the owners of such lots *and to the public. Carolina Land Co. v. Bland,* 265 S.C. 98, 217 S.E. (2d) 16 (1975). However, to have a *completed* dedication, there must be some form of acceptance of the offer to dedicate. *See* 23 AM. JUR. (2D) *Dedication* § 42 at 38 (1983). *See also Hodge v. Manning,* 241 S.C. 142, 127 S.E. (2d) 341 (1962).

Here, there has been undisputed acceptance of the Nel La Lane roadway from Lake Tide Drive westerly across V.I.P. Estates. However, a serious dispute exists as to whether the portion of the roadway on H. Wessinger's land has been accepted.

> [T]he view is generally taken that acceptance of part of the street amounts to *total* acceptance of the entire street. Some cases have refrained from stating that acceptance of part of a street is acceptance of the entire street, but have said instead that where partial acceptance is shown, total acceptance will be presumed, or, in other words, that the party disputing the acceptance will bear the burden of proving that such acceptance was limited.

23 AM. JUR. (2D) *Dedication* § 48 at 42 (1983). South Carolina has followed the latter rule mentioned above, *i.e.,* where, as here, acceptance of part of a street is clearly shown, the burden of proof shifts to the party (appellants here) seeking to prove limited acceptance of the street. *Chafee v. Aiken,* 57 S.C. 507, 35 S.E. 800 (1900).

Even so, we hold that summary judgment for the respondents was inappropriate. While the use, repair, and working of the streets by public authorities is a mode of acceptance, *Chafee, supra,* there is conflicting evidence in this regard. We hold the mere fact that maintenance crews travelled the road to prevent turnarounds is not suffi-

cient to demonstrate acceptance. Further evidence on this point needs to be heard.

Public use is also recognized as a mode of acceptance of an offer to dedicate. *Outlaw v. Moise*, 222 S.C. 24, 71 S.E. (2d) 509 (1952). There is conflicting evidence of record on this issue as well. The roadway has apparently been blockaded permanently since 1968, and it appears vandals and partygoers, *i.e.* trespassers, were the primary public users of the roadway before the blockade was erected, although there is evidence on this point to the contrary. Hence, genuine issues of material fact exist here regarding whether the offer to dedicate was ever accepted. Summary judgment was thus inappropriate.

We note also that it appears from the record that the special referee made his own *ex parte* inspection of the various roadways here. While we are certain this personal inspection was made in utter good faith by this very capable special referee, it is, nevertheless, impermissible. We have held this conduct constitutes reversible error. *See Thompson v. Hammond*, 299 S.C. 116, 382 S.E. (2d) 900 (1989); *Ralph v. Southern Railway Co.*, 160 S.C. 229, 158 S.E. 409 (1931).

Accordingly, we reverse the special referee's grant of summary judgment and remand this case for a full hearing on all issues.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.

## APPENDIX I

(Exhibit 1)

## APPENDIX II

N/F
WESSINGER.

0.15 MILE TO
S.C. 877
LAKE TIDE ROAD

IRON(0)    N 88'30'0" E
484.12

IRON(N)

*NEL – LA LANE*
IRON(N)  (COUNTY MAINTAINED)

N 76'51'2" W    302.70

1.26 ACRES

V. I. P. ESTATES

CAMPBELL

N 35'17'50" W    341.50

350.78    342.00
S 0'20'0" W

IRON(0)

IRON(0)

LEXINGTON COUNTY
PLANNING COMMISSION
NOV 3 0 1988

*L A K E
M U R R A Y*

PLAT PREPARED FOR

## HOWARD L. WESSINGER & ALMA S. WESSINGER

LEXINGTON COUNTY    near    CHAPIN, S. CAROLINA

REFERENCE PLATS:
1. V. I. P. ESTATES BY ROBERT E. COLLINGWOOD, Jr. DATED JUNE 25, 1963.
2. HOWARD WESSINGER BY CLAUDE E. JOHNSON DATED MARCH 27, 1964.
3. SUSAN CAMPBELL BY McMILLAN ENGINEERING COMPANY DATED AUGUST 28, 1968.

I HEREBY CERTIFY THAT THE MEASUREMENTS
SHOWN HEREON ARE CORRECT AND THERE ARE
NO ENCROACHMENTS OR PROJECTIONS OTHER
THAN SHOWN. A PORTION OF THE ABOVE LOT DOES
APPEAR TO BE IN A SPECIAL FLOOD HAZARD
AREA ACCORDING TO FEMA/FIA COMMUNITY
MAP 450129 0125 B JUNE 15, 1981.

WILLIAM M. BRASINGTON, P.L.S.
UDS inc.
601 DEVINE STREET
COLUMBIA, SOUTH CAROLINA  29201
BOOK 229 PAGE 324

DATE: AUGUST 19, 1988 SCALE: 1" = 100'

50    0    100

PROFESSIONAL LAND SURVEYOR — No.9312

TMS 1124–1–20