16384

BILLINGS *ET AL.* v. McDANIEL
(60 S. E. (2d) 592)

*Mr. Charles W. McTeer,* of Chester, *for Appellant,*

*Messrs. McFadden & McFadden,* of Chester, *for Respondents,*

July 14, 1950.

TAYLOR, Justice.

Action in this case was commenced June 17, 1949, by respondents, seeking to enjoin the appellant from obstructing a certain alleyway or right-of-way at the rear of properties

fronting on Saluda Street in the Town of Chester, South Carolina. All of the property involved was once a portion of the estate of S. W. Mobley, deceased, which was divided into various lots on or about February 20, 1909, as is more fully shown by plat bearing this date by James McLarnon and recorded in the office of the Clerk of Court of Chester County in Vol. 123, page 256.

Appellant interposed the defense first, that no necessity exists for the alleyway; second, that said alleyway had been abandoned; and third, that respondents are estopped from claiming an easement in said alleyway.

All respondents, with the exception of W. H. Peden, base their contentions upon grants by deeds, all of which refer to the plat, heretofore referred to, in which the alleyway was created for the benefit and convenience of the owners of the lots abutting thereon. Respondent Peden is the owner of a plot, 50 feet square, at the northern end of Lot No. 10, as shown on the plat, which is located on the southern side of the alleyway in question and immediately to the rear of Lot No. 6, which is owned by appellant, and his only means of ingress to and egress from his lot is by and over the alleyway in question. Therefore, actual necessity exists as to this lot.

The deed by which Lot No. 6 of Block "A" was acquired by appellant shows such lot to be 50 feet wide and 158 feet deep, being bounded on the west side by the alley. Appellant testified that, when he purchased this property in 1942, he knew that his lot was bounded by the alleyway in question and that such was not included in the property he purchased. He also testified that he knew that respondent Peden owned a lot immediately to the rear of his and that, should he be successful in closing this alleyway, Peden would have no means of ingress and egress except over property belonging to others. His position, however, is that this alleyway was abandoned prior to his purchase of Lot No. 6 in 1942, that neither respondents nor their predecessors in title had made

use of said alleyway, but on the contrary had obstructed same by building fences across and various buildings thereon, and that bushes and large trees had been permitted to grow in such a way as to render the alleyway useless.

Respondent Peden, who has been familiar with this property since it was sold by lots in 1909, testified that he lived on Lot No. 2 from approximately 1910 until 1946; that the said alleyway was in use regularly during that period of time, particularly for the hauling of coal and wood, etc.; that the alleyway had always been in use during that time and had never been closed; that in 1946 he sold this property to Mrs. Pauline Ross; that prior to that time he and the other people whose property adjoined this alley made use thereof and that it was never closed.

Mrs. Ross testified that the alleyway was used during the months of June, July and August of 1949 and that she would have used it much more frequently but for the fact that appellant ordered trucks not to use the alley.

Respondent Plyler testified that, when he purchased his property in 1937, the alleyway was open and usable, that he had since used this alleyway and had observed his neighbor, Mr. Taylor, doing likewise.

Respondent Miss Mary Bradford, testified that, when she and her sister purchased their home in 1935, the alleyway was open to Walnut Street and that it was never obstructed in such way as to render it unusable until appellant placed a gate across it.

Respondent Billings testified that for the past seven years the alleyway had been open and usable, that the city trash wagon hauled trash thereform in 1949, and that he had observed a neighbor using it as a means of access to the back of his lot.

It seems to be uncontradicted that some of the adjoining property owners encroached over the line at various places along the alleyway, but the jury, after

hearing the testimony and viewing the exhibits, decided and found that the alleyway had not been abandoned, and there is ample evidence to support such findings.

"Generally, where property sold is described with reference to a plat or map upon which streets and ways are shown, an easement therein is implied. * * * There is an implied covenant that such ways exist and shall continue to exist. Easements implied in accord with such principles are deemed a part of the property to which the grantee is entitled, and neither the grantor nor any person claiming under the conveyances can repudiate the easements or deny that they exist, where they are capable of existing." 17 Am. Jur., Par. 47, P. 958.

"* * * according to the great weight of judicial opinion, the lot purchaser is entitled to the use of all the streets and ways, near or remote, as laid down on the plat by which he purchases. * * * This being the law, the land owner, when he lays off his land into lots, streets, and alleys, and has the same platted, and then sells lots with reference to the map thereof, must be presumed to know that he thereby dedicates such streets and alleys to the use of such lot owners and the public; and the rights of the lot owner are not to wait in abeyance until the public authorities see fit to accept and take charge of such streets and alleys, but he is at once entitled to have all such streets and alleys opened for his use, necessary to the enjoyment of his property. All such streets and alleys must be considered as appurtenant thereto, for they begin at his property and extend in a network all over the land platted." *Cook v. Totten*, 49 W. Va. 177, 38 S. E. 491, 492, 87 Am. St. Rep. 792.

"The primary elements of abandonment are the intention to abandon and the external act by which the intention is carried into effect. The intention to abandon is considered the first and paramount inquiry. * * * to justify the conclusion that there has been an abandonment, there must

be some clear and unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership. \* \* \* The authorities are harmonious in holding that mere non-user of an easement created by deed for a period however long will not amount to an abandonment, except where otherwise provided by statute, or by the deed itself. There must be in addition other acts by the owner of the dominant estate conclusively manifesting, either a present intent to relinquish the easement, or a purpose inconsistent with its further existence." *Witt et al. v. Poole,* 182 S. C. 110, 188 S. E. 496, 498.

See also *Elliott v. Rhett,* 5 Rich. 405, 57 Am. Dec. 750; *Polson v. Ingram,* 22 S. C. 541.

Appellant further contends that respondents are estopped from claiming an easement in said alleyway and bases this upon the argument that such alleyway had been abandoned, and the same having once been abandoned, respondents are forever estopped to reassert any claim or right therein. This contention must fail for the reason that, under the evidence, this was a question of fact to be determined by the jury who found in fact that there was no abandonment.

There is no testimony of any nature whatsoever that respondents did anything to mislead appellant when he purchased Lot No. 6. In fact, appellant himself testified that when he purchased the property, he was familiar with it and the plat thereof, which provided for the alleyway, and that he knew the alleyway was not included in the property which he was buying. There is a complete absence of any evidence or testimony as to any conduct on the part of respondents or their predecessors in title that had caused the appellant, by any act of theirs, to change his position to his harm in any respect, so as to now be estopped from asserting their rights to the use of the alleyway.

As stated in *Farmers' Bank & Trust Co. v. Southern Granite Co.,* 96 S. C. 106, 79 S. E. 985, 998, "the doctrine

of estoppel can be invoked by the party setting it up showing that he had been misled to his injury."

The doctrine is more fully stated in *Hubbard v. Beverly et al.,* 197 S. C. 476, 15 S. E. (2d) 740, 742, 135 A. L. R. 1206, where the Court states the following rule: "To successfully assert the doctrine of estoppel, a party litigant must show that he was without knowledge or any means of knowledge of the facts and circumstances upon which he predicates the claim of estoppel and that without this knowledge or means of knowledge he was influenced by the conduct or language or silence amounting to a representation of facts, or a concealment of material facts by the party sought to be estopped, and that in reliance thereon he changed his position to his injury and damage."

Appellant's own testimony shows that, at the time of the purchase of Lot No. 6, he was fully aware of the existence of the plat showing the alleyway and that he was not purchasing any portion thereof, and nowhere in the record is there any evidence that he was in any way misled to his harm.

For the foregoing reasons, we are of the opinion that all exceptions should be dismissed, and it is so ordered.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.