**WOODSIDE MILLS, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 2125.

United States District Court
W. D. South Carolina,
Greenville Division.

March 25, 1958.

---

5. Ibid.

Rainey, Fant, Brawley & Horton, Greenville, S. C., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Carrington Williams, Attys., Dept. of Justice, Joseph E. Hines, U. S. Atty., Spartanburg, S. C., Robert A. Clay, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, Chief Judge.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. This is a suit brought by the taxpayer, a South Carolina corporation, for the refund of income taxes and interest in the amount of $45,885.10, alleged to have been erroneously paid for the fiscal year ending October 31, 1950. Jurisdiction is invoked under the provisions of 28 U.S.C.A. § 1346(a)(1). A jury having been waived, the case was tried by me sitting without a jury.

2. The basis of the suit is the disallowance by the Commissioner of Internal Revenue of taxpayer's claim that it made a contribution in 1950, to the County of Greenville, South Carolina, in the amount of $119,431.10, representing the alleged fair market value of the land and improvements in certain streets, alleys and sidewalks in its cotton mill village at Greenville, South Carolina. These were claimed as a donation to a political subdivision of the State for exclusively public purposes under Section

23(q)(1), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(q)(1). The taxes herein sued for were assessed by the Commissioner, paid by taxpayer, a timely claim for refund filed, denied, and this suit instituted.

3. In around 1902, taxpayer purchased land for the site of its cotton mill near Greenville, South Carolina. Two public roads, maintained, at least in part, by the county, ran through this property. Thereafter taxpayer erected a plant, laid off and built a mill village around it, and cut through streets and alleys. The houses were rented to taxpayer's employees. The streets and alleys were available not only for the use of taxpayer's employees but were thrown open to the general public as well. In 1918, 1919, 1921, and 1923, taxpayer paved the village streets with concrete, and installed curbing, sidewalks and storm drains.

4. The land acquired by taxpayer totalled some 181.5 acres, of which 25.6 acres were included in the streets and alleys. Taxpayer paid real estate taxes on all of this land. It also maintained the streets and alleys and had them patrolled by company police.

5. In 1949, or 1950, taxpayer closed one of the streets in its mill village and erected a gymnasium thereon.

6. Some time prior to 1950, taxpayer began to consider disposing of its mill village by selling the houses to its employees and turning over the streets and alleys to the County of Greenville. The street plans were discussed with the Supervisor of Greenville County, who gave county approval of the proposal.

7. A plat of taxpayer's plant, mill village, and the village streets and alleys was recorded January 24, 1950, with the Register of Mesne Conveyances of Greenville County, South Carolina. The houses in taxpayer's mill village were subsequently sold therefrom, with first refusal being given taxpayer's employees who lived in the houses. On April 14, 1950, taxpayer executed a deed purporting to convey to the County of Greenville certain streets and alleys in its mill village. These streets, alleys and improvements are the subject of this litigation.

8. Taxpayer obtained an appraisal by engineers showing the cost in 1950, of replacing by commercial means the improvements on the mill village streets. The cost was $81,031.10. It also obtained a real estate appraisal purporting to show the fair market value of the land in the streets, comprising some 25.6 acres. This land was appraised at the same value per acre, $1,500, as the adjacent land on which taxpayer's mill houses and other properties were situated. The appraisal on the land was $38,400. The total deduction claimed was $119,431.10; it was disallowed by the Commissioner of Internal Revenue, and this suit resulted.

### Conclusions of Law and Opinion

 The taxpayer could not convey the streets and alleys to Greenville County in April, 1950, because they had already been dedicated to public use. Property rights are created by state law, and the Federal Government can tax the rights thereby created, within its granted taxing powers. Pitts v. Hamrick, 4 Cir., 228 F.2d 486. A public thoroughfare may be dedicated by deed, prescription, or by dedication. Edgefield County v. Georgia-Carolina Power Co., 194 S.C. 311, 88 S.E. 801. The testimony of the taxpayer's officers in the Board of Tax Appeals proceeding (Woodside Cotton Mills Co. v. Commissioner, 13 B.T.A. 266) shows that as early as 1918, the streets had been taken over by the public by prescription, and the mill no longer considered itself the owner thereof. However, taxpayer had acquiesced and agreed with the public in such taking, so that there was also, in effect, an implied dedication of the streets to *public* use, not merely for the use of the residents in the village.

 Once the taxpayer was thus divested of ownership of the streets by the year 1918, it could not reacquire them from the county by prescription. Outlaw

v. Moise, 222 S.C. 24, 71 S.E.2d 509; Crocker v. Collins, 37 S.C. 327, 15 S.E. 951. The evidence introduced by the taxpayer in the attempt to show its ownership of the streets and alleys all related, except for the payment of taxes, to a much later period. One of taxpayer's witnesses testified that the mill maintained absolute control over the streets, but this witness did not come to work for the mill until 1949. Other evidence was to the effect that a gymnasium had been built on one of the streets, after it had been blocked off by the mill, but this was not until 1949. There was evidence that the mill paid taxes on the street land. However, payment of taxes on a street is not conclusive evidence of an intention not to dedicate it to the public. Shia v. Pendergrass, 222 S.C. 342, 72 S.E.2d 699. The latter was the principal case relied upon by taxpayer's counsel in oral argument, but is distinguishable from the instant case in that the Shia case held that a landowner who permitted her tenants and their patrons to use a tract of land as an alley did not by such conduct indicate a positive intent to dedicate the land to the public. The testimony here of taxpayer's own officers in the earlier Board of Tax Appeals proceeding was that as far back as 1918, they had intended to dedicate these streets and alleys to public use.

In order to constitute an effective dedication, no formal acceptance is necessary. The dedication is effective if there is an express or implied acceptance, evidenced either by public use or by the acts of the public authorities. Outlaw v. Moise, supra, 222 S.C. 24, 71 S.E.2d 509; Chafee v. Aiken, 57 S.C. 507, 35 S.E. 800; Corbin v. Cherokee Realty Co., 229 S.C. 16, 91 S.E.2d 542. In the latter case it was held that the City of Florence was not required to accept an offer of dedication in its entirety, but could accept such part as it might wish and if it did not accept all, the unaccepted portion would remain dedicated to public use, though not maintained by the city, and could not be obstructed but must be kept free for opening as occasion might require.

If there were any ownership left in the taxpayer by the beginning of the year 1950, it was divested when taxpayer had a plat of its mill village made and recorded on January 24, 1950. This was no donation or charitable act, any more than is that of any other subdivider of real estate who, in order to facilitate the sale of his lots, plats the land into lots, lays off streets, and sells the lots. Moreover, in order to carry out its overall plan of selling the mill village as shown on the plat, the taxpayer was required by South Carolina law to record the plat of the mill village. Section 60–207, South Carolina Code of 1952, requires any person, first offering property for sale according to a plat of survey thereof, to file such plat in the clerk's office of the county where the property is situated. This was done, and the taxpayer derived the resulting benefit of being able to sell by reference to such plat. A landowner who does this is presumed to know that he thereby dedicates the streets and alleys to the use of the lot owners and the public; the rights of the lot owner are not suspended until the public authorities accept such streets and alleys, but arise immediately and extend in a net-work all over the land platted. Newton v. Batson, 223 S.C. 545, 549, 77 S.E.2d 212; Billings v. McDaniel, 217 S.C. 261, 265, 60 S.E.2d 592. By such action a landowner manifests an intent to dedicate such streets to public use, and is estopped to deny the right of such persons to an easement in the streets as represented on the plat. Corbin v. Cherokee Realty Co., 229 S.C. 16, 91 S.E.2d 542; Billings v. McDaniel, supra, 217 S.C. 261, 265, 60 S.E.2d 592; Cason v. Gibson, 217 S.C. 500, 61 S.E.2d 58; Town Council of Aiken v. Lythgoe, 7 Rich.S.C. 435.

A recent ruling by the Commissioner of Internal Revenue holds (Rev.Rul. 57–488, 1957–43 Int.Rev.Bull. 21, page 22) that: " * * * the release of frontage to a county for widening a road, in order

to obtain the required approval by the county planning commission of the plat plan of certain lots prior to the sale thereof, does not constitute a gift; neither does it qualify as a charitable contribution for federal income tax purposes; however, the cost of the frontage is a part of the total cost basis of the remaining property for determining gain or loss on the sale thereof."

█ The present case is within this ruling in that the taxpayer was required by law to file the plat of the subdivision which it decided to use in the disposition of its mill village. It cannot be permitted to claim a charitable or public use contribution for that which it was obligated by law to perform. It is to the taxpayer's advantage to use the plat of its mill village as a means of disposing of it and having elected to pursue this method, the taxpayer cannot thereby receive and advantage not accorded other taxpayers who must do the same thing in selling real estate from a subdivision but who receive no tax advantage.

The cases cited hold that a subdivider who records a subdivision plat and sells lots therefrom has thereby dedicated the streets thereon to public use and that the basis for this rule of law is estoppel. Taxpayer's attorney testified that his discussion with the County Supervisor in late 1949, and the latter's agreement to "accept" the streets was a step preparatory to selling the property. A plat of taxpayer's plant, mill village, and the village streets and alleys was recorded January 24, 1950, with the Recorder of Mesne Conveyances of Greenville County, South Carolina. The houses in taxpayer's mill village were subsequently sold therefrom, with first refusal being given taxpayer's employees who lived in the houses. On April 14, 1950, taxpayer executed a deed purporting to convey to the County of Greenville certain streets and alleys in its mill village. Having represented its streets and alleys to be as shown on the plat and having obtained the county's agreement to accept them based on such representations, the elements of estoppel are present here just as they are in the usual case of recording a plat and selling from it.

For the foregoing reasons, I must conclude that the acts of taxpayer with reference to the streets, alleys, sidewalks and improvements in its mill village, both in throwing open and acquiescing in public use thereof, and in filing a subdivision plat thereof as a part of its plan to sell off the houses in the mill village, constituted a prior dedication of such streets and alleys and that this dedication was accepted. Having come to this conclusion it is not necessary for me to determine the question of fair market value of the streets and alleys in April, 1950, when the deed was executed.

It is ordered that judgment be entered for the defendant, together with its costs.