### 17966

Dr. G. B. HODGE, Respondent, v. Bernard MANNING, Appellant

(127 S. E. (2d) 341)

*Messrs. Perrin & Perrin,* of Spartanburg, *for appellant,*

*Messrs. John C. Williams and Max B. Cauthen, Jr.,* of Spartanburg, *for respondent,*

September, 24, 1962.

LEWIS, Justice.

The plaintiff and the defendant are adjoining landowners and the issues in this appeal concern the right of the plaintiff to an easement for a roadway along the common boundary of their lands. The parties own adjoining portions of lots Nos. 11 and 12 as shown on a subdivision plat made in 1916 and recorded in 1917 in the R. M. C. Office for Spartanburg County, South Carolina. This plat shows a "proposed road" along the boundary of lots Nos. 11 and 12. The defendant purchased a portion of tract No. 12 in 1946 and the plaintiff tract No. 11 in 1960, both deeds containing references to the foregoing plat. Upon the purchase by the plaintiff of tract No. 11, he asserted a right to the use of the "proposed road" as shown on the foregoing plat, basing his claimed right upon an implied easement arising from the designation of the proposed road upon said plat and the subsequent references thereto in the descriptions in the deeds of the respective parties. The plaintiff further al-

leged that said road had been open and in continuous use for a period of over forty years. The defendant denied any such right of the plaintiff upon the ground that such easement had been extinguished by the acts and conduct of plaintiff's predecessor in title. The defendant then erected a fence along a portion of the "proposed road" effectively blocking any use thereof by the plaintiff. The plaintiff thereafter instituted this action to secure a mandatory injunction requiring the defendant to remove the fence and for damages allegedly sustained by him from such action of the defendant.

The issues were referred to the Master for Spartanburg County for determination and, after a hearing, the Master held that any easement, which may have arisen for the use of the proposed road as designated on the foregoing subdivision plat, had been lost by the acts and conduct of plaintiff's predecessor in title amounting to an abandonment thereof. Upon exceptions to the report of the Master, his findings were reversed by the lower court. The lower court held that the plaintiff had an easement to the road in question and that such road had been open and in use in accordance with such plat designation for a long number of years. A mandatory injunction was accordingly issued requiring the removal of the obstructions erected by the defendant and prohibiting any future obstruction of the "proposed road". The claim of plaintiff for damages was disallowed. The defendant has appealed from the order of injunction issued by the lower court.

The essential facts, upon which a decision of the issues in this case turns, are not in dispute.

In 1917 there was recorded a subdivision plat entitled "Subdivision Farm Lands Mrs. J. J. Boyd *et al.*" The southern boundary of the subdivision was Glendale Road and the plat showed a strip, twenty feet wide, designated as a "proposed road", running in a northerly direction from Glendale Road to the northern boundary of the subdivision,

the proposed road having a length of approximately 3,500 feet. It is this "proposed road" along the boundary of the property of plaintiff and defendant which is involved in this action.

The foregoing plat showed fourteen lots or tracts in the subdivision. The frontage on Glendale Road was subdivided into eight lots, numbered 1 through 8. To the north of these lots lay tracts 9 and 10 containing approximately 15 acres each. To the north of tracts 9 and 10 lay tracts 11 and 12, tract 11 containing 11.8 acres and No. 12 containing 16.3 acres. Tracts 9 and 11 lay west of tracts 10 and 12. The remainder of the subdivision to the north was divided into two tracts, Nos. 13 and 14, of 36 acres each. While the lines separating all of the remainder of the lots and tracts in the subdivision ran north and south, tracts 13 and 14 were separated by an east-west line, so that tract No. 13, along with a branch, formed the entire northern boundary of tracts 11 and 12, with tract No. 14 lying to the north of tract No. 13.

The proposed road was shown on the plat as running from Glendale Road northward along the boundary line between lots 4 and 5, 9 and 10, 11 and 12, and across 13 and 14 to the northern boundary of the subdivision. The strip designated as "proposed road" was shown by parallel broken lines and extended ten feet on each side of the lines between the various tracts.

In 1917 Marion J. Knox purchased tract No. 11. In 1920, he and his brother purchased the adjoining tract No. 12. After selling the eastern portion thereof to the County Club of Spartanburg, Mr. Knox purchased in January, 1921 his brother's interest in the remainder of tract No. 12, containing 7.05 acres. This placed title in Marion J. Knox to a tract of approximately eighteen acres, composed of tract No. 11 and the adjoining western portion of tract No. 12, along the boundary of which tracts the foregoing plat showed the proposed road in question. All of the deeds to Mr. Knox contained references to the 1916 subdivision plat.

In 1946 Mr. Knox sold the portion of tract No. 12 owned by him to the defendant. The description in the deed from Mr. Knox to the defendant contained the following recital with reference to the foregoing subdivision plat:

"Being the western one-half of Lot No. 12 on a plat of the J. J. Boyd Lands made by W. N. Willis, C. E., March 22, 1916, and recorded in Plat Book 5, at Page 91, R.M.C. Office for Spartanburg County."

Mr. Knox owned tract No. 11 at the time of his death in 1960. In the sale of this tract through judicial proceedings, the defendant purchased a small triangular portion of four-tenths of an acre for the purpose of straightening his western property line, and the remainder of the tract was purchased by the plaintiff. In both the deed to the defendant for the four-tenths of an acre and to the plaintiff for theremainder of tract No. 11, the descriptions contained the following references to the subdivision plat of 1916:

"This being a portion of Lot 11, as shown in Plat Book 5, Page 91, R.M.C. Office for Spartanburg County, and subject to any rights of ingress and egress in and to said road or proposed as shown on plat recorded in Plat Book 5, R.M.C. Office."

The lower court, in holding that the plaintiff held an easement for the use of the proposed road as shown on the plat, based such decision primarily upon the well settled principle of law that, where property is sold and described with reference to a plat or map upon which streets and ways are shown, an easement therein is implied in favor of the grantee. *Billings et al. v. McDaniel,* 217 S. C. 261, 60 S. E. (2d) 592. The contention of the defendant, adopted by the Master in his report, is that any right to an easement which may have arisen by virtue of the references in the deeds to the plat in question were lost by the acts and conduct of Marion J. Knox, the predecessor in title of both plaintiff and defendant, which clearly showed an intent to abandon any claim to the proposed road in question.

Since no question was raised in the lower court as to the effect upon the rights of a subsequent grantee by the designation of the strip in question on the plat as a "proposed road" we must assume, as did all parties in the lower court that such designation on the plat and references thereto in a subsequent conveyance gave rise to an implied easement for the use of the strip as a roadway. While other issues have been raised and argued, we think that a determination of whether or not such easement was abandoned by the said Marion J. Knox, the immediate predecessor in title of both plaintiff and defendant, will dispose of the appeal.

Our inquiry, as was that of the lower court, into whether the easement in question was abandoned, refers primarily to the acts and conduct of Mr. Knox in relation to such road. If Mr. Knox abandoned the easement, then it could only be revived by a new grant. *Taylor v. Hampton,* 4 McCord 96. It is clear that the references in the deeds of the plaintiff and the defendant to the 1916 subdivision plat and the proposed road did not show an intent to create any new rights but only referred to such rights as arose by virtue of the designation on the 1916 plat of such road. Therefore, under the facts of this case, if Mr. Knox during his ownership of the lands abandoned his right to the use of the proposed road as designated on the 1916 plat, such acts are binding on plaintiff and the defendant, and their rights must be determined accordingly. The question then is: Did Marion J. Knox abandon the easement in question?

As heretofore pointed out, the strip designated as a proposed road began at Glendale Road on the south and extended across the subdivision to its northern boundary, a distance of approximately 3500 feet. At the time of the subdivision of the Boyd lands none of the proposed road was open and existed only on the foregoing subdivision plat. Shortly after the subdivision was opened so much of the proposed road as ran from Glendale Road to the southern corner of tracts 11 and 12, a distance of approximately 540 feet, was opened as a public road and became known as Club Drive.

Thereafter a road was opened from Club Drive, where it ended at the southern corner of lots 11 and 12, extending west along the southern boundary of tract No. 11 to what is now known as Woodburn Road. Club Drive, extending north to lots 11 and 12, and the connecting road running west to Woodburn Road are now open and maintained as a public road, giving tract No. 11, now plaintiff's property, a frontage on said road of approximately 703 feet.

When Mr. Knox purchased tract No. 11 in 1917, he built a home thereon and lived there until he became mentally ill in 1956. At the time that his home was built he constructed a barn east of the location of the residence, both the barn and residence being torn down after his death in 1960 leaving only the concrete floor of the barn in existence. This barn was approximately 18 feet by 36 feet and was located on the strip shown as a "proposed road", completely blocking any passage over it. He then opened a driveway from the residence and barn to the public road to the south, a distance of approximately 350 feet. This driveway did not adhere to the strip shown on the subdivision plat as a proposed road, but meandered along the division line between tracts 11 and 12, at places located entirely on lot No. 11 and others partly on tract No. 12.

Upon acquiring the western portion of tract No. 12 in 1921, Mr. Knox occupied and used both tracts 11 and 12 as one parcel of land, using all of it, including the strip shown as a proposed road, as his private property. He constructed a small building on tract No. 12, adjacent to the barn. The combined acreage was used by him to raise flowers and as a goat dairy farm. He constructed fences on and across the proposed road at several places. The property was fenced on the southern boundary and a gate placed at the entrance to the driveway from the public road (Club Drive). This gate was locked at night and left open in the day.

Upon the sale of the western portion of tract No. 12 to the defendant in 1946, Mr. Knox constructed a fence from the rear of the barn northward along the center of the proposed

road to the boundary line of tract No. 13, a distance of approximately 595 feet, completely blocking any use of the proposed road for travel over such distance. Also, there has been permitted to grow in the proposed road, north of the barn, large trees and bushes which effectively block any passage of vehicles along the strip in question.

Tracts 13 and 14, which lie north of Nos. 11 and 12 and across which the foregoing subdivision plat shows the proposed road, were purchased in the early 1920's by Mr. Victor M. Montgomery. After purchasing these tracts Mr. Montgomery constructed a large dairy barn on tract No. 13. The dairy barn was constructed approximately 200 to 300 feet north of tracts 11 and 12 and squarely across that strip shown as "proposed road" on the plat. This dairy barn is still located on the premises and, since its construction, has completely blocked the strip shown as a proposed road. In 1951 tracts 13 and 14 were purchased by Mr. Thomas B. Pierce who has now opened a residential subdivision on such tracts and other property adjoining on the north. The proposed road was never opened across tracts 13 and 14 and Mr. Pierce opposes any such opening.

There was never a dedication of the proposed road to public use along the property line of plaintiff and the defendant, and any right of plaintiff to the use of the road must arise from a private easement thereto. The record conclusively shows that no part of the proposed road has ever been opened as a public road, except that portion from Glendale Road to the southern boundary of lots 11 and 12. Other than the foregoing section, there has never been any acceptance, express or implied, of the proposed road as a public one, either by acts of the public officials or by general public use. Without such acceptance any purported dedication of the road to public use would not be complete. *Outlaw v. Mosie,* 222 S. C. 24, 71 S. E. (2d) 509.

The driveway into the property of Mr. Knox did not become a public road by virtue of any general use by the public.

It was used by him as a driveway into his farm. As such, it was used by persons visiting at his home and by those who came to his place to buy flowers and goat milk. Such users do not convert a private driveway into a public road.

It is equally clear that the location of the driveway by Mr. Knox into his farm was never intended as an opening of the proposed road as shown on the subdivision plat. On the contrary, we think that the record conclusively shows that Mr. Knox abandoned any easement which he may have had to the proposed road in question.

It is well settled that an easement may be lost by abandonment and in determining such question the intention of the owner to abandon is the primary inquiry. The intention to abandon need not appear by express declaration, but may be inferred from all of the facts and circumstances of the case. It may be inferred from the acts and conduct of the owner and the nature and situation of the property, where there appears some clear and unmistakable affirmative act or series of acts clearly indicating, either a present intent to relinquish the easement, or purpose inconsistent with its further existence. *Witt et al. v. Poole,* 182 S. C. 110, 188 S. E. 496; *Billings et al. v. McDaniel, supra,* 217 S. C. 261, 60 S. E. (2d) 592.

The following from 1 C. J. S., Abandonment, § 4b is quoted with approval in *Witt et al. v. Poole:*

"An intention to abandon property or a right need not appear by express declaration, although it may be manifested thereby, but is ordinarily to be ascertained from the acts and conduct of the owner or holder. It may be inferred as a fact from the surrounding circumstances, and is shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property or right. So, in determining whether property or a right was intended to be abandoned, it is proper to consider, and to give due weight to the nature of the property or right, and the conduct of the owner [in relation] to it, and also the fact, where

it is a fact, that at the time the question comes up for determination such property or right is being adversely used by another, or others. Lapse of time, and nonuser, are likewise circumstances to be taken into consideration, even though neither of them is, in itself, an element or act of abandonment."

While the testimony discloses no declaration on the part of Mr. Knox of an intention to abandon any easement that he migh have had to the road in question, we think the evidence conclusively shows abandonment by his acts and conduct, clearly inconsistent with any intention to retain his rights. Mr. Knox owned tract No. 11, now owned by plaintiff, for a period of approximately 43 years and tract No. 12, now owned by the defendant, for a period of approximately 25 years. At no time during such period was the proposed road, as shown on the subdivision plat, ever opened between the properties now owned by plaintiff and defendant or any claim made thereto by anyone.

The only claim to such an opening of the proposed road is based upon the fact that Mr. Knox established a private driveway into his property on or near the boundary line between the tracts now belonging to plaintiff and defendant. The acts and conduct of Mr. Knox with reference to the remaining portion of the proposed road clearly show that he was not attempting to open such road, but was only establishing a private driveway from Club Drive to his barn and residence, the location of the driveway being determined by the location of the public road on the south and his barn and residence on the north. When Mr. Knox constructed his barn across the proposed road, allowing it to remain for a period of approximately 43 years, and erected fences across and down the center of a great portion of the strip, he was putting it to a use utterly inconsistent with the right to use it as a roadway. The long continued use of the proposed road for purposes inconsistent with its use as a roadway clearly manifested an intent to abandon the easement.

The case of *Witt et al. v. Poole, supra,* 182 S. C. 110, 188 S. E. 496, sustains the foregoing conclusion. That case involved an easement to a mill pond. The facts showed long nonuse of the mill pond and that the owner of the easement had on occasions farmed the mill pond area. Under such facts, the court held that there had been an abandonment of the easement.

In determining the intention of the parties with reference to the use of the strip of land designated on the 1916 subdivision as a "proposed road", it is important to keep in mind the nature of the property and the conditions with respect to access to the subdivision in 1916 and those existing subsequent to the making of the plat. It was after the making of the subdivision plat that the portion of the proposed road from Glendale Road to the southern boundary of tracts 11 and 12 was opened. After this portion of the road (Club Drive) was opened, a connecting public road along the southern boundary of tract No. 11, now owned by plaintiff, was opened, giving a frontage on the south on a public road which was not in existence prior to that time. When the above public roads were opened both lots 11 and 12 were given direct access thereto, which they did not have when the subdivision plat was made. Lots 13 and 14, across which the proposed road was shown, are now part of a larger residential subdivision, apparently with access to roads to the north. The foregoing changes subsequent to the 1916 subdivision plat, providing ready access to public roads, no doubt eliminated the contemplated necessity or convience of the "proposed road" when the 1916 plat was made, and was no doubt one of the reasons why the proposed road was never opened along the boundary between the property of plaintiff and defendant. Plaintiff now has a frontage on the public road of 703 feet, along which ready access may be had to his tract of land.

We do not think that a claim which has been dormant for approximately 43 years should, under the clear acts of abandonment in this case, be permitted to be revived at this

late day. The record discloses no equities which would impel sustention of plaintiff's claim to the right to now open the road in question. The evidence in this case is susceptible of only one reasonable inference, and that is that Marion J. Knox, the predecessor in title of both plaintiff and defendant, abandoned any easement to the "proposed road" in question.

The lower court ruled inadmissible certain testimony of the defendant as to a conversation had by him with Mr. Knox prior to the latter's death. One of the exceptions of the defendant charges error in such ruling. We find it unnecessary to determine the admissibility of the testimony in question. The record amply sustains the conclusions reached herein without the consideration of such testimony.

The judgment of the lower court is accordingly reversed and the cause remanded to the lower court for entry of judgment in favor of the defendant.

Reversed and remanded.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.

BRAILSFORD, Justice (concurring).

I concur in the able opinion of Justice Lewis, which soundly holds that Mr. Knox abandoned his right, as a purchaser under the sub-division deed, to an easement across the tracts of land lying north of those which he purchased. However, when he acquired title to tract 11 and, later, to the western portion of tract 12, all of his rights in the segment of the proposed road along the former boundary line between these two tracts merged in his fee. He had no easement in his own land which could have been lost by abandonment, as a mode of divesture of a property right. *Pearce v. McClenaghan*, 5 Rich. 178, 187, 39 S. C. L. 178, 187. When he conveyed fee simple title to the western portion of tract 12 to the defendant in 1946, he reserved no rights in the land granted. The plaintiff acquired none by his subsequent purchase under defendant's grantor.

BUSSEY, J., concurs.