21109

IMMANUEL BAPTIST CHURCH OF NORTH AUGUSTA, Respondent, v. C. H. BARNES, Individually and d/b/a Red Wing Rollerway, Inc., Appellants.

(264 S. E. (2d) 142)

*Arthur D. Rich,* Aiken, *for appellants.*

*Franklin D. Beattie, Jr.,* Aiken, *for respondent.*

January 8, 1980.

GREGORY, Justice:

This is an appeal from an order of the lower court permanently enjoining appellants C. H. Barnes, individually and d/b/a Red Wing Rollerway, Inc., from using the private driveway of respondent Immanuel Baptist Church of North Augusta. We affirm.

Mr. Barnes is the sole shareholder of Red Wing Rollerway, Inc. For purposes of this appeal, we refer to C. H. Barnes, individually and d/b/a Red Wing Rollerway, Inc. as appellant.

The parties are adjacent property owners whose respective chains of title share a common grantor, Mrs. Warren K.

Toole. The properties were once contained in a thirty-one acre tract owned by Mrs. Toole.

Appellant began construction of a skating rink on his property in December of 1976, with access for ingress and egress on Atomic Road, a well-traveled highway in North Augusta, South Carolina, whereon appellant's property fronts.

What appellant seeks is additional access to the skating rink for the convenience of his customers by connecting a private roadway running across his property to the private paved driveway used by respondent's church members and employees. The private driveway divides respondent's pastorium and other church facilities on one side and the church building itself on the other, and opens onto another public roadway, Old Edgefield Road.

The connection of appellant's private roadway from the skating rink to respondent's driveway would in effect open as a shared roadway what was once planned as Benson Drive, and is so designated on a plat prepared in April of 1955 of a proposed residential subdivision to be known as Happy Acres.

Happy Acres was a project envisioned by Mrs. Toole and her children for the adjacent properties now owned by appellant and respondent.

Appellant claims a right of way across the church driveway as a grantee in a chain of title to property first conveyed to him by deeds of Mrs. Toole's children referring to the Happy Acres plat.

Respondent church acquired several parcels or lots from Mrs. Toole and her children over a period of nine years. The first parcel was acquired before the plat of Happy Acres was prepared, and it is on this parcel that the church building stands. Thereafter, from 1955 through 1962 respondent acquired several other lots from the children by deeds referring to the plat.

These additional lots were either adjacent to the original parcel or directly across the roadway shown as Benson Drive on the plat of Happy Acres. On them respondent constructed its pastorium and other church facilities, using that portion of the proposed Benson Drive which divided its property as a private driveway.

Happy Acres subdivision never materialized. Not one lot shown on the plat of Happy Acres was ever sold by Mrs. Toole's children to anyone besides respondent for residential purposes.

Consequently, the children decided to abandon the residential project, close the proposed streets showing on the plat, and market the property as a large, single commercial tract. To this end there was prepared an agreement entitled "Agreement for Closing Streets" dated December 22, 1959, and recorded June 4, 1963, which was signed by all of the children owning lots in the proposed subdivision and by respondent church.

This agreement reflected the intention of the parties to close Benson Drive and declared that it shall no longer be recognized or used for street purposes. However, that portion of the roadway which divided the church property and which was used by respondent as a driveway was left open by the agreement.

Subsequent to the execution of the agreement, respondent paved the driveway at its own expense. No other portion of the once proposed Benson Drive was ever opened or used as a street by anyone until 1976, when appellant constructed the skating rink. It is undisputed that respondent used its portion of Old Benson Drive as a private driveway undisturbed for a period of approximately twenty years.

In 1964, appellant Barnes acquired several lots from each of the Toole children which in the aggregate comprise the large tract he now owns and upon which the Red Wing Rollerway Skating Rink now stands.

Barnes conveyed the lots that same year to one Strickland, who later re-conveyed the property to appellant by two deeds in 1976 and 1977. It was not until appellant re-acquired the property that he made plans to build the skating rink and obtain access to Old Edgefield Road by right of way across the church driveway.

This being a matter in equity wherein the lower court is in disagreement with the findings of the matter to whom the case was first referred, we are free to review the record to determine in our own view where the preponderance of the evidence lies. *Bryant v. Coleman,* 271 S. C. 512, 248 S. E. (2d) 479 (1978). In so doing, however, we are not required to disregard the findings of the lower court. *Nienow v. Nienow,* 268 S. C. 161, 232 S. E. (2d) 504 (1977). And those findings of the master concurred in by the lower court will not be disturbed unless found to be without evidentiary support or against the clear preponderance of the evidence. *Wilson v. Wilson,* 270 S. C. 216, 241 S. E. (2d) 566 (1978).

Appellant's major contention is that he originally acquired lots from the various Toole children by deeds referring to the subdivision plat on which Benson Drive appeared. The children had acquired the lots from Mrs. Toole. Accordingly, he argues there was a completed dedication of a private easement over Benson Drive to appellant as grantee.

When the owner of a tract of land lays it out in streets and lots on a plat and sells those lots by deeds referring to the plat, normally the legal effect is the creation and conveyance of private easements in the streets to the grantees. *Outlaw v. Moise,* 222 S. C. 24, 71 S. E. (2d) 509 (1952) ; *Briarcliffe Acres v. Briarcliffe Realty Company, Incorporated,* 262 S. C. 599, 206 S. E. (2d) 886 (1974) ; *Carolina Land Company, Inc. v. Bland,* 265 S. C. 98, 217 S. E. (2d) 16 (1975). The dedication of this private easement is complete as to the grantee, becomes part of the property conveyed, and inures to the benefit of the

grantee's successors in title. 23 Am. Jur. 2d, *Dedication,* § 25. *Bland, supra.*

It is an equally well-settled principle that an owner of an easement may relinquish that easement by abandonment, express or implied. *Hodge v. Manning,* 241 S. C. 142, 127 S. E. (2d) 341 (1962); *Bland, supra;* 28 C. J. S. *Easements,* § 58. The pivotal issue in determining whether there has been an abandonment is the intention of the owner. Id. This intention can either appear by an express declaration of the owner, or be implied from his acts and conduct and the circumstances of the case. *Bland, supra,* and *Hodge, supra.*

If there appears a present intention to relinquish the easement, or if there is clear evidence of a purpose inconsistent with the existence of the easement, then a case for abandonment is presented. *Hodge, supra.*

We find that the facts and circumstances of this case clearly evince the intention of all the children to forsake the residential development scheme and embark on a project entirely inconsistent with the need for streets as shown on the plat: the assimilation of the children's individual interests in the lots into one large commercial tract to attract a purchaser for their collective interests. The agreement itself reflects this intention.

We cannot agree with appellant that respondent, by signing the agreement, was willing to give up its easement in the portion of Benson Drive dividing the children's property for the benefit of the children who shared the easement with respondent, without protecting its interests in the continuing private use of the driveway.

In our view, the intent of the agreement was to abandon all private easements in Benson Drive with the exception of respondent's right of private use of the small portion of Benson Drive which divided its property.

Appellant next contends that the agreement is invalid because all of the subdivision lot owners did not sign it. It is true that at the time of the execution of the agreement, Boardman Petroleum, Inc. owned the southwest corner lot fronting on both Old Edgefield Road and Atomic Road upon which it operated a gasoline service station. Boardman did not sign the agreement.

This does not defeat the other owners' ability to abandon their respective interests. We are not dealing here with a dedication of a public easement in the street, but rather with the distinctly different interests of private easements. *Outlaw, supra.* Boardman has asserted no right to any portion of Benson Drive that appears in the record, and his absence of consent to the agreement does not preclude others from relinquishing their private rights.

The lower court agreed with the master that there was no evidence of acceptance by the public so as to complete a dedication to public use of Benson Drive. See *Anderson v. Town of Hemingway,* 269 S. C. 351, 237 S. E. (2d) 489 (1977). Agreeing that this finding is clearly supported by the evidence, we will not disturb it. *Wilson, supra.* Thus, any claim appellant may have by way of a public dedication is without merit.

The Agreement for Closing Streets was of record and within appellant's chain of title at the time appellant originally purchased the property from the Toole children. This was sufficient to put him on notice of the agreement and impute to him the recitals contained therein. *Bland, supra.*

The facts and circumstances, including the written declaration of the agreement, manifest the Toole children's clear intention to abandon their private easements in the proposed roads in the residential development scheme, and adopt a new plan for the property which eliminated the need for the proposed roads.

We hold that the relinquishment of these easements by appellant's predecessors in title, prior to their conveying the property to appellant, effectively extinguishes the claim he asserts to that portion of old Benson Drive which divides respondent's property.

Lastly, appellant challenged the lower court's award of attorney fees to respondent. After reviewing the record and briefs and hearing arguments of counsel as to this issue, we are convinced there is no error of law present, and accordingly affirm under Rule 23 of the Rules of Practice of this Court.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.